## SAN ANTONIO RAPID TRANSIT STREET RAILWAY COMPANY v. HENRY LIMBURGER.

### No. 232.

**1. Case Adhered to—Street Railroads.**

In Texas & Pacific Railway Company v. The Rosedale Street Railway Company, 64 Texas, 80, it was held, that the operation of a horse railway upon a public street was not an additional servitude, and that owners of property abutting upon the street could not recover damages for such use when the railway is properly constructed and operated. This doctrine is recognized as the settled law of this State ...............................83, 84

**2. Electric Street Railway.**

As to their rights to use of public streets, electric street railway companies do not differ from companies operating their cars along streets by use of horse power........................................................ 85

**3. Same—Several Lines.**

The same principle obtains where more than one track occupy a public street; as one has the right, so have others.................................... 86

**4. Access to Business Houses.**

While street railway companies have the right to run their cars along public business streets, such right does not destroy the right of the abutting lot owner to load and unload at his front. Such use for reasonable time would be superior to the right of the railway company to use the street so occupied in passing .............................................................. 86

**5. Tracks Must Be Properly Kept.**

For injuries from the careless construction or repair, by which the rails were above the street surface, right of action would arise; such right is not concluded by this judgment............................................... 87

ERROR to Court of Civil Appeals for Fourth District, in a case from Bexar County.

The petition claimed damages to city lots of the plaintiff abutting upon a public street, along which the defendant had constructed and was operating an electric street railway. The District Court sustained the demurrer and dismissed the suit. This was reversed by the Court of Civil Appeals.

In application for writ of error, it is alleged, "that the Court of Civil Appeals, by its conclusions of law and opinion, * * * attempted

to place a construction upon and make an application of article 1, section 17, of the Constitution of this State; and that the said Court of Civil Appeals, in its conclusions of law and opinion, and in rendering said judgment, overruled the opinion of the Supreme Court in the case of The Texas & Pacific Railway v. The Rosedale Street Railway, 64 Texas, 80; * * * that there are errors upon questions of law in the said judgment of said Court of Civil Appeals and in its opinion delivered in said cause; * * * that the said court erred in its conclusions of law and opinion, and in reversing and remanding this cause, because in so doing, and in holding that the said petition in the court below stated a good cause of action, the said court in effect expressly overruled the Supreme Court of this State in its opinion and judgment in the case of The Texas & Pacific Railway v. The Rosedale Street Railway, 64 Texas, 80, and in holding that the abutting owner of property has any cause of action against a street railway company for the construction of its tracks and the operation of its cars along and in front of said abutter's property, when the said railway is constructed at grade, and is constructed and operated in a proper and skillful manner, and by lawful authority."

*Ogden & Harwood*, for plaintiff in error.—1. A street railroad constructed at grade by lawful authority is not an additional burden on the street, either as to the general public or the abutting owner. Railway v. Street Railway, 64 Texas, 80, citing Attorney-General v. Railway, 125 Mass., 515; Hobart v. Railway, 27 Wis., 198; 9 Am. Rep., 461; Eichels v. Street Railway, 78 Ind., 266; Hinchman v. Horse Railway, 17 N. J. Eq., 75; Booth Street Ry. Law, pars. 82, 83, and note; Elliott on Roads and Streets, pp. 528–531.

2. Though there is a conflict of authority, the law seems to be settled by the great weight of authority, that an ordinary commercial railroad in a street is an additional burden, but with respect to the street railroad, irrespective of the motive power used, the authorities are unanimous that it is not an additional burden when properly and lawfully constructed and operated. Hogencamp v. Horse Railway, 17 N. J. Eq., 83; Kellinger v. Street Railway, 50 N. Y., 206; Rafferty v. Traction Co., 23 Atl. Rep., 884; Lockhart v. Street Railway, 21 Atl. Rep., 26; Cool. Const. Lim., 556; Dill. Mun. Corp., pars. 722, 723; Railway v. Heisel, 38 Mich., 62; same case, 31 Am. Rep., 306.

3. To give the abutting owner a cause of action, he must be affected in a manner different from the general public. The fact that access to his property is rendered less convenient and more difficult than before, does not give a right of action. Railway v. Street Railway, 64 Texas, 80; Booth Street Ry. Law, par. 77; City Railway v. Mills, 85 Mich., 634; same case, 48 N. W. Rep., 1007; Hogencamp v. Horse Railway, 17 N. J. Eq., 83; Kellinger v. Street Railway, 50 N. Y., 206; Rafferty v. Traction Co., 23 Atl. Rep., 884; Lockhart v. Street Rail-

way, 21 Atl. Rep., 26; People v. Railway, 52 N. W. Rep., 1010; Bagging Co. v. Railway, 23 S. W. Rep., 592.

*C. A. Keller*, for defendant in error.—1. An abutter has an especial interest in a highway giving him the right of access to his premises, and may maintain an action for an obstruction which cuts off his right of access. Elliot on Roads and Streets, pp. 474, 475, note 1; Id., 528, note 1; Id., 529, note 4; Id., 530, note 3; Id., 531, 532; Cool. on Torts, 616, note 3; Ray on Neg., 83–85, 87; Dooley Block v. Rapid Tr. Co., 33 Pac. Rep., 229; Railway v. Curtan, 33 Pac. Rep., 297; Decker v. Railway, 33 N. E. Rep., 349.

2. Operating so many lines of street railway on a street as to exclude other travel is not a legitimate use of the street, and imposes a new servitude, for which compensation must be made. Booth on St. Rys., sec. 80, p. 113; Carli v. Street Railway, 32 Minn., 101; same case, 20 N. W. Rep., 89; Dooley Block v. Rapid Tr. Co., 33 Pac. Rep., 229.

3. If the use of the street for the site of a railroad track unreasonably abridges the right of the lot owners to the use of the street as a means of ingress and egress, an action for damages will lie against the railway company. Railway v. Combs, 19 Am. Rep., 67; 10 Bush, 382; McQuaid v. Railway, 22 Pac. Rep., 899; same case, 18 Ore., 236; Smith v. Street Railway, 11 S. W. Rep., 709; same case, 87 Tenn., 626; Elliot on Roads and Streets, pp. 474, 526, 528–532; Paquet v. Street Railway, 22 Pac. Rep., 906; same case, 18 Ore., 233; Railway v. Curtan, 33 Pac. Rep., 297.

4. A multiplicity of tracks in a narrow street may seriously affect the rights of abutting owners. Booth on St. Rys., sec. 96, p. 141; Street Railway v. Street Railway, 48 Mich., 433; Railway v. Mills, 85 Mich., 634, 659; Cool. Const. Lim., 6 ed., p. 677; Booth on St. Rys., p. 142, note 1; Dooley Block v. Rapid Tr. Co., 33 Pac. Rep., 229.

5. The measure of damages is the diminution of the value of the property. Railway v. Combs, 19 Am. Rep. (Ky.), 67; McQuaid v. Railway, 22 Pac. Rep., 899; same case, 18 Ore., 236; Booth on St. Rys., sec. 102, p. 149; Id., sec. 107, p. 156; Railway v. Railway, 34 N. E. Rep., 400; Railway v. Downie, 82 Texas, 383.

GAINES, CHIEF JUSTICE.—The defendant in error brought this suit to recover of plaintiff in error damages for the depreciation in value of certain business lots in the city of San Antonio, alleged to have been caused by the construction and operation of the company's railway along the street upon which the lots fronted. The cause of action is stated in the petition as follows:

"4. That heretofore, to wit, on or about the months of October, November, and December, 1891, said defendant corporation, in violation of plaintiff's rights and against his wishes, did unlawfully build, construct, and put down a line of electric street railway from the United States postoffice, on Alamo plaza and Avenue E, in said city

of San Antonio, along Avenue E to Austin street; thence along said Austin street to Grand avenue; thence along Grand avenue to River avenue; thence along said River avenue outside of the corporate limits of the said city of San Antonio to the suburban town known as Alamo Heights, at the head waters of the San Antonio River; and that said line of street railway was built from Alamo Heights along River avenue to Grand avenue, along Grand avenue to Austin street, then down Austin street to Avenue E, and to the postoffice; that said line of street railway runs along and upon Grand avenue on the north side of block 38, and turns into Austin street and runs along and upon Austin street on the east side of said block 38; and that on said line of street railway said defendant operates, controls, manages, and runs electric cars and motors for the purpose of transporting passengers and freight for hire and profit from the said city of San Antonio to said town of Alamo Heights; that said cars are run along and upon said Austin street, and in front of said block 38, at regular intervals of about ten to twenty minutes.

"5. That plaintiff was, at the time said line of street railway was built and constructed as aforesaid, and still is, the owner in fee simple of lots 14 and 15, in block 38, on said Austin street; that he also owned a large rock storehouse and a small frame store building located upon said lots 14 and 15, in said block 38, and fronting east on the west side of said Austin street, which have been used and rented for storerooms for the retailing of merchandise. That said premises and improvements, at the time the said defendant built, constructed, and laid down said railway track in front of said block 38, were of the value of $20,-000.

"6. That said Austin street is only about forty feet wide, and before said defendant built said line of street railway, another corporation, to wit, the San Antonio Street Railway Company, already had a double track electric street railway upon said Austin street, operating a line of electric street railway, motors, and cars from that portion of the city of San Antonio known as Government Hill to the corner of Soledad and Houston streets, and another line of electric motors and cars using the same track and running from the Southern Pacific, or 'Sunset,' depot to a suburban town outside of the city limits of the city of San Antonio, known as Lakeview; both of said lines, so belonging to said San Antonio Street Railway Company, using said double line of railway track, running along and upon and occupying the greater portion of the center of said Austin street on the east side of said block 38, to Tenth street, on the south side of block 38, thence down said Tenth street to Avenue C, and on through the city to the respective ends of said lines. That said San Antonio Street Railway Company runs its said cars upon the said Government Hill line at regular intervals of about five minutes; that defendant corporation built its said line of railway between the curbstone immediately in front of plaintiff's property and the western track of the railway belonging to said San

Antonio Street Railway Company; and when said cars are running up-on said defendant's line of railway and passing in front of plaintiff's said storerooms, there are only about six feet between the side of the car and said curbstone.

"7. That from said Austin street is the only way of ingress and egress to said storerooms of plaintiff; and that in receiving invoices of goods for said storerooms, or in putting up orders for delivery to cus-tomers, it is necessary to load and unload the same from the front of the said storerooms on said Austin street; that the constructing and building of said line of street railway by defendant corporation has so completely obstructed the said street as to prevent plaintiff and his tenants from having the proper use and enjoyment of said storerooms and premises.

"8. That defendant's said railway track in front of said block 38, and in front of plaintiff's said premises, are kept in a bad and danger-ous condition; that the roadbed is allowed to get so badly out of repair that the steel 'T' rails used upon said track are frequently several inches higher than the street for almost the entire length of said block 38, making it difficult and dangerous for vehicles of any kind to at-tempt to cross the same.

"9. That said Austin street is a good business street, daily thronged with people, and one upon which the traffic and travel is very large; and that from Tenth street north to and beyond said 'Sunset' depot has been for years a splendid location for retail business; that there has always been a strong demand and good prices paid for storerooms in that vicinity, and plaintiff has always been enabled, until defendant built said line of railway, to let his said storerooms and premises with-out trouble, for a profitable rental; but by reason of the fact that there are now three railway tracks on Austin street in front of said block 38 (and nowhere else), upon which cars are constantly run by electric motors, and the consequent danger occasioned thereby to all classes of users of said street, and the bad and dangerous condition of repair in which defendant's said track is kept, a large portion of the travel and traffic upon that part of said street has been discontinued, driven away, and gone elsewhere; and plaintiff's said storerooms being no longer desirable as a business location, on account of the construction and use of defendant's said line of railway, the rental and market value of plaintiff's said property has greatly depreciated, to plaintiff's damage $10,000."

The trial court sustained a general demurrer to the petition, and, the plaintiff having declined to amend, gave judgment for the defend-ant. The plaintiff below having sued out a writ of error to the Court of Civil Appeals, the judgment was reversed and the cause remanded.

In the case of the Texas & Pacific Railway Company v. The Rose-dale Street Railway Company, 64 Texas, 80, this court adopted the elaborate and able opinion of Judge Watts, of the Commission of Ap-peals, in which it is held, that the operation of a horse railway

upon a public street was not an additional servitude, and that the owners of property abutting upon the street could not recover damages for such use when the railway is properly constructed and operated. That ruling was in accord with all the decisions up to that time, with one or two exceptions; and though there seems latterly to be some disposition to question the correctness of the doctrine, it is still supported by the great weight of authority. Since the decision of that case, much capital has been invested in street railways in this State, the value of which might be seriously impaired by a contrary ruling at this time. However much, therefore, we might be inclined to rule differently, were it an open question, we should not now feel at liberty to overrule that decision, unless convinced that it was palpably wrong. With the exception of New York, the same doctrine seems to have been announced in the courts of every State of the Union in which the question has been presented for decision. See Booth on Street Railways, section 82, and note, in which the cases are cited.

The construction and operation of an ordinary steam railway upon a street is generally regarded by the courts as an appropriation of such street to a different purpose from that for which it was originally dedicated. Such railways are maintained for the purpose of transporting passengers and freight between distant points; and from the nature of their construction and their mode of operation, they monopolize in part the use of the streets as a highway, and obstruct their enjoyment for the purposes for which they were originally established. It is not so, as the courts hold, with a street railway. If properly constructed, their tracks constitute no serious impediment to the legitimate use of the thoroughfare. Its cars interfere with travel, but so do omnibuses, carriages, and other vehicles used for the transport of passengers. Street railways facilitate the passage of persons from one part of the city to another, and this is one of the objects for which streets are opened and maintained. It is therefore argued, that although street railways may have been unknown at the time a street was dedicated, it does not follow, that a use of the streets by such a railway is not a use in pursuance of the original purpose contemplated in laying out the highway. A street may be older than the omnibus or the hansom cab, and yet who would deny the right of the drivers of such conveyances to use it? We conclude that, for the reasons given, the doctrine announced in the case of Railway v. Street Railway, supra, ought to be held the settled law of this State.

So far we have been speaking of street railways upon which the cars are drawn by horse power; and so far as we have said, the authorities are in substantial accord.

Here, however, we have the case of a street railway upon which the cars are propelled by electricity. We have here, also, the additional circumstances, that two tracks of street railroad had already been constructed upon the street in front of the plaintiff's property, and that

the track in question was laid upon that part of the street next to plaintiff's lot, and left a space of six feet only between that track and the sidewalk.

The first question, then, is:   Are street railways upon which the cars are moved by electricity distinguishable from those upon which horse power is used?   Upon this question there is some conflict of authority, but it is held by the great majority of the courts in which the point has been decided, that they are not.   Koch v. Railway, 23 Atl. Rep. (Md.), 463; Taggart v. Street Railway, 16 R. I., 668; Railway v. Tel. Association, 48 Ohio St., 390; Halsey v. Street Railway, 20 Atl. Rep. (N. J.), 859; Williams v. Street Railway, 41 Fed. Rep., 556.   See contra:   Dooley Block v. Rapid Tr. Co., 33 Pac. Rep. (Utah), 229.   The case of Detroit City Railway Company v. Mills, 85 Michigan, 634, is cited in support of the doctrine that an electric railway is not an additional burden upon a street; but it would seem from the concurring opinion of the chief justice and the two dissenting opinions, that if the naked point had been presented the court would have decided the question in the affirmative.

We concur, however, with the majority of the courts, in holding that street railways which are operated by mechanical power do not impose an additional servitude upon the street, and therefore do not damage the owner of the abutting property, whether he owned the fee in the street or not.   Why an electric road should be a burden and a horse railroad should not, we are unable to see.   The electric car, as was pointed out in the opinion of the court in the Michigan case cited above, "does not occupy as much space upon the street as does the car with the horses attached."   We may assume that they are capable of being run at a much greater rate of speed than a horse car, and the greater rapidity of motion may render them more dangerous.   But the increased rate of speed is not necessarily inherent in the system, and so far as we can see, they may be operated as slowly and as safely as other cars.   The right to construct and operate a line of electric railway does not confer a right unnecessarily to endanger persons or property; and if the cars of a company operating such a road are propelled at a dangerous rate of speed, it would be responsible to all persons who may be injuriously affected, either in person or property, by such improper operation.

We come then to the question of the obstruction of the access to the plaintiff's storehouses.   Does the defendant company occupy a different position with reference to the rights of the plaintiff, by reason of the fact that its line, in connection with the two which were previously constructed, practically occupies the entire space covered by the street, and that its track is in close proximity to the edge of the sidewalk in front of plaintiff's lots?   We find it difficult to answer this question in the affirmative.   As was argued by Mr. Justice McGrath, in his able dissenting opinion in Detroit City Railway v. Mills, to which we have already referred, if the construction of a street railway in a

street, however narrow, or the construction of a third line in a street, be a burden, it would seem to follow, that the construction of one line in a broad street is also a burden. The difference is merely in degree, and not in kind. If, when the tracks of the railway occupy a very large proportionate part of the street between the curbstones, the owner of abutting property is entitled to recover substantial damages, how can we deny the right of the owner to recover some damage, even if merely nominal, when the space is comparatively small? The converse of the proposition must be true. If in the latter case there can be no recovery, so in the former. We have seen, that for a single track in a broad street the owner of the adjacent property is not entitled to any compensation from the railroad company; and we think it follows, that he is not entitled to be compensated when there are more than one track. The principle is, that the original purposes for which the street was dedicated embrace the operation of a street railway, and that if the owner of adjacent property suffer a loss by reason of such operation, it is damnum absque injuria.

In regard to the matter of access to the property, the question is not whether the construction and maintenance of the railway interferes with the ingress and egress to and from the storehouses, but it is whether such construction and maintenance infringe upon the right of access. It is possible that the operation of a line of omnibuses or drays, or the frequent passage of all kinds of vehicles for the conveyance of persons or property, may seriously interfere with and obstruct the occupants of the buildings in the receipt and delivery of goods; and yet it could not be held that such interference was unlawful. Every one has the right to the use of the street for the purpose for which it was dedicated, and still in every crowded thoroughfare the driver of any one vehicle almost necessarily interferes with the passage of some other. One can not, however, unreasonably delay to the obstruction of another. So with the case of a street railway. Its passage may be lawfully interfered with by persons lawfully using the thoroughfare for pleasure or for business. It may obstruct the passage of other vehicles; but it can not legally do so, except upon reasonable necessity. The right of the company to run its cars over its track is not superior to the right of another person in the use of the street. In a similar case, the Supreme Court of Pennsylvania, in treating of this question of access, use this language: "But the right of the property owner in this respect is not at all changed. He has the same right after the tracks are laid and the cars are running that he had before. It is a right which must be exercised in reason, whether there are cars on the street or not. In no circumstances does it confer the privilege of obstruction by unreasonable exercise. But the reasonable exercise of the right gives no right to the street car companies to arrest it. If at any time the owner has occasion for the presence of vehicles in the front of his property on the streets to take away or deliver persons or goods, he may exercise that right for such reason-

able time as is necessary for his purpose; and if in such exercise of the right the passage of the street cars is impeded, the street cars must wait. Such stoppage of cars is a matter of hourly occurrence in all large towns and cities where street car tracks are laid upon narrow streets. * * * But the important question is as to the existence of the right of the owner, and not as to its abuse by either the street car company or the owner. For such abuse by the company on the one hand, or by the owner on the other, each is responsible, and each has adequate remedy." Rafferty v. Traction Co., 23 Atl. Rep., 884.

There is no complaint in the petition with reference to the erection of poles or the stretching of wires along the street, and therefore the question, whether they constitute an additional servitude, is not before us for decision.

The facts alleged in the eighth paragraph of the petition, if supplemented by a proper averment of damages, would have shown a cause of action. The rails of a street car track should be laid and maintained on a level with the grade of the street, so as not to constitute a substantial interference with the passage of vehicles. We hold, that if properly constructed they are not a new burden upon the owners of adjacent property in law; and they should be so constructed as not to be a burden in fact. But if the rails in front of the plaintiff's premises are permitted to project above the surface of the street, or to become dangerous in other respects, as alleged in the petition, the road becomes a nuisance, which may be abated, and for which the company is answerable in damages. But such a nuisance is temporary. The measure of damages in a case of that character is not the depreciation in the value of the abutting property. Baugh v. Railway, 80 Texas, 56. The only damages alleged in the petition are the decline in the value of the lots and storehouses. For the damages resulting to the defendant in error from the dangerous manner in which the street has been maintained, he is entitled to recover upon proper averment and proof, and it seems, that the adjudication in this case will constitute no impediment to such recovery.

We are of the opinion, that the judgment of the Court of Civil Appeals should be reversed and that of the District Court should be affirmed, and it is so ordered.

*Reversed and rendered.*

Delivered March 7, 1895.