## ERNEST RISCHE v. TEXAS TRANSPORTATION COMPANY.

### Decided January 29, 1901.

**1.—Constitutional Law—Property Taken for Public Use—Compensation.**

The constitutional provision that property shall not be taken for a public use until compensation therefor be first made, does not so apply, where the property is merely damaged but not appropriated, as to deprive the Legislature of power to authorize acts for the public good that might result in damage to individuals without requiring as a condition precedent that all damages shall be first paid. Const., art. 1, sec. 17.

**2.—Street Railroads—Damage to Abutting Owner—Injunction.**

Where a street railway company, by the establishment and operation of its road along a street, had damaged but not appropriated the property of abutting owners, it can not be restrained from the use causing the damage because it has not made arrangements for compensation before the use began. Railway v. Fuller, 63 Texas, 469, distinguished.

**3.—Same—Nuisance.**

A corporation duly chartered under the statute authorizing the incorporation of street railway companies for transporting passengers and freight, and having the permission of the city to lay its tracks and operate its cars on the streets, can not be enjoined from such use of the streets, as being a nuisance, at the suit of an abutting property owner, although he may have granted the land occupied by the street to the city for street purposes alone.

**4.—Same—Injury Not Irreparable.**

A street railway incorporated for transporting freight will not be restrained from operating its road at the instance of an owner of property abutting on the street because it is using heavy electric motors and hauling large quantities of freight, rendering access to his premises dangerous and inconvenient, and endangering the lives of his family and other persons using the street, since the injury in such case is not irreparable and compensation therefor may be had in damages.

**5.—Same—Transportation of Freight—Damages.**

Since a street railway for transporting freight is a commercial railway, its operation, where it subjects the street to an additional servitude, entitles an abutting owner to damages for injury inflicted on his property, not suffered in common with other property along the route.

Appeal from Bexar. Tried below before Hon. John H. Clark.

*T. D. Cobbs* and *Denman, Franklin & McGown,* for appellants.

*Newton & Ward,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was originally instituted against the city of San Antonio, Otto Koehler, Otto Wahrmund, Oscar Bergstrom, John J. Stevens, the San Antonio Brewing Association, the Lone Star Brewery, and the Texas Transportation Company, but in an amended petition all of the defendants were dismissed from the suit except the last named. The object of the suit was to recover damages for the building and operating of a street railway for freight purposes on a certain street on which the property of appellant abuts, and to enjoin the further operation of the railway.

Appellee filed general and special exceptions to the petition, which were sustained by the court, and appellant declining to amend, it was adjudged that he take nothing by his suit and pay all costs.

Appellant alleged in substance that he was the owner of certain lots in the city of San Antonio, at the corner of Grand avenue and River avenue and fronting on both streets; that in September, 1897, appellee constructed on said street a street freight railway and is operating the same, and that this was done by virtue of a charter obtained from the State of Texas, and under an ordinance duly enacted by the city of San Antonio granting a franchise to appellee to operate such railway. It was further alleged that heavy iron "T" rails were used in constructing the track; that there is another railway track on said streets, and two trolley wires; that heavy electric motors have been placed on the track in question and are being operated in transporting large refrigerator cars used by railroad companies for transporting beer; that appellee runs from four to six trains daily, which are composed of from three to fifteen cars in addition to the motor car; that such use is an additional servitude on said streets, and is a continuing nuisance and trespass; that in the construction of the road appellee has not occupied the center of the street, but has constructed its track within six feet of appellant's sidewalk, thereby rendering access to his residence dangerous and inconvenient, and appellant has been forced thereby to abandon the front entrance to his house; that the cars make great noise and jar and shake his house, and the cars are run so rapidly as to endanger the lives of his family and other persons using the streets. Damages were prayed for and an injunction against the further operation of the road.

It has been held by this court, and the ruling approved by the Supreme Court, that the railway being operated by appellee is for public purposes. Mangan v. Transportation Co., 18 Texas Civ. App., 478.

The Constitution of Texas provides that "no person's property shall be taken, damaged, or destroyed, or applied to public use, without adequate compensation being made, unless by consent of such person; and when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money." At the time this constitutional provision was adopted the rule seemed to be that the word "taken," as used in Constitutions in this connection, should be confined to an actual taking of property, and that damages incurred by the owner of property indirectly or consequentially could not be recovered. The constitutional provision was undoubtedly enacted to meet this construction. Railway v. Eddins, 60 Texas, 656; Railway v. Fuller, 63 Texas, 467; Railway v. Meadows, 73 Texas, 32.

It follows from the constitutional provision that if the use of the streets by appellee for the purpose of transporting freight from one point to another in the city of San Antonio imposes an additional servitude on the streets, that is, puts them to a use not contemplated in their dedication and construction, appellant is entitled to compensation for any damages that he may have sustained by such use of the streets,

and if there was a "taking" of his property, as contemplated by the Constitution, appellee should, in the absence of condemnation proceedings and compensation paid or secured, be restrained from such use of the streets.

Whatever may be the enlarged scope given in definitions by courts to the word "taken" when used in Constitutions in connection with the taking of private property for public uses, the Constitution of Texas has, in the provision hereinbefore copied, confined it to its ordinary use, and it must be held to mean an actual taking in the physical sense of the word,—damages arising from anything else than an actual taking being fully provided for in the section quoted. Keeping in view that the makers of the Constitution were using the word "taken" in the sense of an actual physical appropriation, it is clear that when it provides that compensation shall be made or secured before the property is taken, it has no reference to a case where property is damaged or destroyed, and one who has merely damaged property without actually appropriating it can not be restrained from the use causing the damage, because he had not made arrangements for compensation before the use was begun.

What we have said would seem to be in conflict with some expressions in the case of Railway v. Fuller, 63 Texas, 469, where it was held that operating a railroad along a street was a "taking," and that whether taken, damaged, or destroyed, compensation must be first made. These expressions were not necessary to the proper decision of the case before the court, and consequently can not be binding as a precedent. No injunction was sought, the injured party merely suing for damages. The expressions referred to in the Fuller case appear to be in conflict with the case of Railway v. Odum, 53 Texas, 353, where it is held that "the regulation or enlargement of the use of the street, the property of the State, is not a taking of property within the meaning of the Constitution of 1869, although the lot owner may thereby suffer incidental inconvenience or injury." The Constitution of 1876 used the word "taken" in the sense that it was used in former Constitutions, and as defined by judicial interpretation, and then provided for damages not expressed in former Constitutions. It is clear that neither the Legislature nor city council could authorize the taking of private property in any other than the constitutional way; but the Legislature has the power to authorize acts for the public good that might result in damage to the individual without requiring as a condition precedent that all damages should be first paid. The Legislature, having the power to do so, has granted the right to obtain charters to operate street railways for the carriage of passengers or freight, and appellee having obtained a charter under authority of the statute, and the city of San Antonio, to whom exclusive control of the streets has been given by its charter, having given permission to appellee to lay its track and operate cars on certain streets, it is acting under lawful authority, and having built its road properly it can not be a public nuisance, and an injunction should not

be granted. There is no allegation that appellant owned the fee in the street, the only allegation on this point being the argumentative one that appellant owned the fee to the center of the street because he owned the abutting property, which does not follow. If he had alleged, however, that he owned the fee, and had granted the land to the city for street purposes alone, it would not alter the case presented by the record. The street is a public highway, and no matter who owns the fee, the public easement is superior to the right of the individual. As said in Halsey v. Street Railway, 20 Atlantic Reporter, 859, by the Court of Chancery of New Jersey: "Lands taken for streets are taken for all time, and, if taken upon compensation, compensation is made to the owner once for all. * * * The authority to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, subject only to the inconvenience of the railroad, is not such a taking of private property from the owner of the adjacent land as is prohibited by the Constitution."

It is not denied that appellee was authorized by its charter to operate a railroad for the transportation of freight; but, on the other hand, it is alleged that the charter for such purposes was granted under title 21, chapter 2, of the Revised Statutes of Texas, and that an ordinance was duly enacted by the city of San Antonio granting a franchise to build such road, and that by virtue of such charter and such ordinance the road was built. The Legislature having the power to grant such charter, and the city being empowered to pass such ordinance, the injunction prayed for was properly denied.

The injunction was also properly denied because the injury was not shown to be irreparable, and if any case at all was made out by the allegations, it was only a right to recover damages, and not one to demand compensation. As said by the Supreme Court of the United States in Osborne v. Railway, 147 United States, 248: "Where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damages in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate, before restraint will be laid on the progress of a public work."

There is no law in Texas for condemnation proceedings except in cases where lands are actually taken by railroads, and it can not with force be contended that condemnation proceedings should be resorted to before the street could be used for the purposes intended. There being no provision for condemnation, it would seem clear that it is a case where the only way open to appellee was pursued, and appellant would be relegated to a suit for any damages he may have sustained.

The question then arises as to whether appellant is entitled to damages arising on account of the construction and operation of the railway. If the railway in question can be classed as a street railway in contradistinction to a commercial railway, then, under the general doctrine of the courts of this and most of the other States of the Union,

appellant would not be entitled to damages on the ground that streets can be legitimately used by street railways, whatever the motive power, if they are properly constructed. Street Railway v. Limburger, 88 Texas, 79; Lewis on Em. Dom., sec. 115h; Halsey v. Street Railway, 20 Atl. Rep., 859; Rafferty v. Traction Co., 23 Atl. Rep., 884; Nichols v. Railway (Mich.), 49 N. W. Rep., 538.

The question then arises, what is a street railway, and can the railway of appellee be placed in that class? It was first held that street cars drawn by horses, and used for the transportation of passengers from one part of a city to another, did not constitute an additional servitude on the streets. They were distinguished from steam railways in the rails and construction of the track, the speed at which they run, the noise and vibration produced, the smoke and steam emitted, the danger of frightening horses, the danger to life, and the size and weight of cars and locomotives. When the steam motor and electric cars were invented, all the reasons given why horse railways were not an additional servitude to streets were ignored except that they must be carriers of passengers, and not of freight, from one point to another in a city. In one instance at least this last reason has been discarded, and it has been held that the streets can be used by railways, whatever be the motive power, and for the carriage of both freight and passengers. Montgomery v. Railway, 104 Cal., 186, 37 Pac. Rep., 786. The weight of authority, however, is that a street passenger railroad, laid on the surface or established grade of a street, is a legitimate use, while all other railroads are not. Lewis on Em. Dom., sec. 115i; Elliott on Railroads, secs. 6, 557; Funk v. Railway (Minn.), 63 N. W. Rep., 1099.

There has been no direct adjudication of this matter in this State, but there are several cases where damages have been allowed which have resulted from the construction of railroads along streets, and this could have been done only on the theory that they were an additional servitude to the street. Railway v. Eddins, 60 Texas, 656; Railway v. Bock, 63 Texas, 245; Railway v. Meadows, 73 Texas, 32; Railway v. Fuller, 63 Texas, 467; Railway v. Jennins, 76 Texas, 373. The railroads in question in the cases cited were steam railroads, but, as we have shown, this would not distinguish them from street railways which may be operated by any motive power, and the decisions must be justified on the ground that the roads were the carriers of freight, which is all that distinguishes the commercial railway from the street railway.

We conclude, therefore, that as the railway of appellee was constructed and operated as a freight railway, it must be classed as a commercial railway, and if an injury has been inflicted on the property of appellant, not suffered in common with other property along the route, he would be entitled under the Constitution to damages. The allegations in the petition show damages to appellant's property, not suffered in common with other property, and would, if proven, entitle him to damages.

The judgment sustaining exceptions to that part of the petition ask-

ing for an injunction will be affirmed, but will be reversed as to the exceptions sustained to the suit for damages and will be remanded for a trial on that part of the petition.

*Affirmed in part; reversed and remanded in part.*

### ON MOTION FOR REHEARING.

In the case of Aycock v. San Antonio Brewing Association, 63 Southwestern Reporter, 953, the identical points involved in this suit were passed upon by this court, and it was held that "the use of the streets being one authorized by law, and consistent with the purposes for which streets exist, plaintiffs were not entitled to have such use restrained by injunction, or declared a nuisance." The Supreme Court refused a writ in the case, and must necessarily have been of the opinion that the language above quoted was the law. The street railway against which an injunction was sought in that case is the one against which it is sought in this case.

It is immaterial whether appellee has any authority to exercise the power of eminent domain or not. If it had all the power with which it is possible to invest any railroad corporation it could not condemn a street, but must enterr upon it through the permission of the city that exercises exclusive control over it. If in doing this it has damaged appellant in a manner not common to all the property holders along the street, it must respond in damages for so doing, but it can not be restrained from a use of the street sanctioned by the Legislature of the State and permitted by the city council of the city of San Antonio. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.