BOONE et al. v. CLARK et al.
(No. 9176.)

(Court of Civil Appeals of Texas. Ft. Worth, May 31, 1919. Rehearing Denied June 28, 1919.)

1. HIGHWAYS &#9758;153—LEASING FOR GAS AND OIL WELLS.

In view of Pen. Code 1911, art. 812, as to obstructing highways, a commissioners' court has no authority under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1370, 2241, 6859, 6860, 6861, to lease any portion of the public highways for oil and gas wells, which will necessarily be obstructions thereof, notwithstanding such portion of the highway has been acquired by purchase and not condemnation, or the lessee also holds a lease from the owner of the fee of the land over which such portion of the highway runs as a right of way.

2. HIGHWAYS &#9758;155 — OBSTRUCTION — INJUNCTION—SPECIAL INJURY.

A suit for relief from a public nuisance, such as the proposed obstruction of the public highways of the county, cannot be maintained by individuals alone, suing as such, unless they can show some special injury to them which is not suffered by the public at large.

3. HIGHWAYS &#9758;159(2) — ENJOINING OBSTRUCTION—PARTIES.

In a suit to enjoin drilling of oil and gas upon the public highways of a county, allegations of plaintiffs' petition that they owned the fee simple title to lands abutting on different public roads, and that producing wells on the adjoining roads would drain the oil from such lands, sufficiently showed special injury not suffered by the general public, so that the suit could not have been abated in its entirety, even though it could have been abated in so far as it pertained to other portions of the highway not adjoining lands owned by plaintiffs.

4. APPEAL AND ERROR &#9758;882(5)—INVITED ERROR—PLEA IN ABATEMENT.

In suit to enjoin drilling oil and gas on the public highways under an attempted lease of right so to do by commissioners' court, wherein the county officials were made defendants, and not only joined lessees in the trial court in contesting plaintiffs' right to injunctive relief, but also joined lessees in appeal from order granting such relief, and appellants had in their answer expressly invited the court to grant injunction as to all portions of the highway except those where the county owned only an easement, and lessees had acquired the mineral rights from the owners of the fee, appellants could not complain that the suit should have been abated in its entirety for plaintiffs' failure to show, by allegations in their petition, a special injury as to all the portions of the highway involved.

Appeal from District Court, Wichita County; Wm. N. Bonner, Judge.

Suit by C. H. Clark and others against T. R. Boone and others. From order for plaintiffs, defendants appeal. Affirmed.

Leslie Humphrey and W. B. Chauncey, both of Wichita Falls, for appellants.

Kay, Akin & Weldon and Carrigan, Britain & Morgan, all of Wichita Falls, for appellees.

DUNKLIN, J. T. R. Boone and Walter Nelson procured from the commissioners' court of Wichita county what is commonly termed an oil and gas lease on all the public roads in that county; the right so conveyed being expressed in the lease as follows:

"For the sole and only purpose of mining and operating for oil and gas and laying pipe lines and building tanks, power stations, and structures thereon to produce, save, and take care of said products."

The lease contained the stipulation that it shall remain in force for a term of five years from its date and as long thereafter as oil or gas shall be produced by the lessees. The consideration for the lease, as expressed therein, was that the lessees shall pay to Wichita county one-eighth of all the oil produced from the leased premises, and $500 per year for each gas well as long as gas is used therefrom. It was further stipulated in the lease that the lessees would hold the county harmless from all suits for damages growing out of the lease, directly or indirectly, and, if the highway should become obstructed by their use of it to such an extent as to necessitate additional public highways, then the lessees shall pay the costs and expenses to the county of securing the same by condemnation or otherwise.

After said lease was procured from the county the lessees began preparations for drilling an oil well upon one of the public roads of the county. To that end they erected a derrick which extended 17 feet out into the public right of way, which is 40 feet in width. The traveled way is near the center of the public right of way, and two legs of the derrick extended out into this traveled way. After the erection of the derrick the lessees planned to drill a well in the right of way about 5 feet from one of its boundary lines. The derrick is about 21 feet wide at the base and 96 feet high, it is built of heavy timber, the legs being 2x8 and 2x10 inches, and it was planned to put a solid floor between the legs and around the hole to be drilled, which would be located in the center of the base of the derrick. In order to drill a well it will be necessary to set a rotary drilling rig directly over the hole to be drilled. A boiler and engine will be used to operate the drilling machinery.

C. H. Clark and 98 other citizens of Wichita county instituted this suit against the lessees and the county judge and the county commissioners of Wichita county to restrain by injunction the use of the public roads for the purposes mentioned in the lease, and from

an order granting a temporary writ, pending final trial on the merits, the defendants have prosecuted this appeal.

It is alleged in plaintiffs' petition that the operations proposed by the lessees will necessarily obstruct public travel upon the roads; that gas escaping from wells drilled will likely ignite gasoline carried in automobiles, and will thereby endanger the lives of passengers therein; that the operation of machinery will cause loud and incessant noises, which is calculated to frighten teams passing over the highway. It is further alleged that plaintiffs are the owners of the fee-simple title to numerous tracts of land abutting on the highway and of the mineral rights thereunder; that the county owns no interest in such mineral rights, and cannot convey the same to the lessees. It is further alleged that all the public roads of the county, and especially where the lessees are preparing to drill an oil well, are much used by the public as highways for travel, including the employés of the post office department; that the act of the commissioners' court in undertaking to lease the highways for oil and gas purposes is beyond the power of the court and is prohibited by law, and the lease executed is absolutely void.

In their answer to the plaintiffs' petition the lessees alleged that the place where they are intending to drill the well mentioned was on a 20-foot strip of land off of the east side of block 58 of the Red River Valley lands and that they had secured an oil lease from H. C. Herndon, the owner of the fee-simple title to that strip, in addition to the lease from the county. They further alleged that "any provision in said oil and gas lease which covers any public road owned by the county in fee-simple title is hereby waived on the part of the defendants, unless they secure the additional right from the landowner of the oil and gas underneath said surface, as has been done in this instance by securing from the owner of said fee-simple title an additional oil and gas lease to his rights therein." The lessees further alleged that they were willing to be enjoined from drilling on any part of the public roads the fee-simple title to which is owned by the plaintiffs and over which land the county has a right of way only.

Upon the hearing of the application for a temporary writ it was agreed that Wichita county acquired the right of way at the place where the lessees were preparing to drill the well by right of way deeds from the owners of the fee-simple title to the land, and not by condemnation proceedings, nor by prescription. And the proof showed that the lessees had acquired an oil lease from Herndon, the owner of the fee-simple title to one-half of the right of way on which the well was about to be drilled, as alleged in defendants' answer. Testimony was also introduced sufficient to support a finding that the drilling operations and structures already erected and to be erected will seriously impair the right of the public to a free and unobstructed highway at that point; that the same will be calculated to frighten teams and endanger the lives of occupants of automobiles passing along the highway. The lessees also introduced testimony sufficient to support a finding that they will, if unmolested by injunction, build a plank road on the opposite side of the right of way over which the public can travel without coming in contact with the derrick or any of the machinery, and that the plank road will be as useful as the present traveled right of way in the center of the highway.

[1] By article 1370, Vernon's Sayles' Tex. Civil Statutes, the power is given the commissioners' court of a county to sell any real estate belonging to the county at public auction. By subdivision 3 of articles 2241 they are given the power "to lay out and establish, change and discontinue, public roads and highways." By subdivision 6 of the same article, the commissioners' court is vested with the power "to exercise general control and superintendence over all roads, highways, ferries, and bridges in their counties." The powers so conferred by the Legislature upon the county commissioners' court are authorized by article 5, § 18, of the state Constitution. Title 119, c. 1, of our Revised Statutes relates to public roads. The following are articles contained in that chapter:

"Art. 6859. All public roads and highways that have heretofore been laid out and established agreeably to law, except such as have been discontinued, are hereby declared to be public roads.

"Art. 6860. The commissioners' courts of the several counties shall have full power and it shall be their duty to order the laying out and opening of public roads when necessary, and to discontinue or alter any road whenever it shall be deemed expedient as hereinafter prescribed.

"Art. 6861. No public roads shall be altered or changed, except for the purpose of shortening the distance from the point of beginning to the point of destination, unless the court upon a full investigation of the proposed change finds that the public interest will be better served by making the change; that said change shall be by unanimous consent of all the commissioners elected."

In Morriss v. Cassady, 78 Tex. 515, 15 S. W. 102, it is held that article 6861 of the present Statutes, which was then article 4360, prohibiting the altering or changing of a public road except for the purpose of shortening the distance between two points unless the public interest will be better served by making the change, does not apply to highways where the right thereto has been acquired by purchase by the county and not by statutory proceedings for condemnation.

Appellants insist (1) that the statute noted above authorizing the commissioners' court

to sell any real estate belonging to the county, was authority to make the lease, since the legal effect of that lease was to convey to the lessees all the interest and title which the county owned in the oil and gas located under the public roads; (2) that the lease should be sustained by virtue of the article of the Statutes which vests in the commissioners' courts authority to alter, change, or abandon any public road or portion thereof the right to which was acquired by purchase and not by condemnation; (3) that the lessees under and by virtue of the lease from the county have the right to drill wells if their operations are conducted in such a manner as not to materially interfere with public travel, and that the evidence showed that the operations which were enjoined would not have that effect; and (4) especially in view of the fact that the lessees also hold a lease from the owner of the fee-simple title to the land in whom the title to the oil and gas and all other minerals remained after he had conveyed to the county the right of way over the same.

The right of way of the county for public road purposes was a mere easement, and the statute authorizing the commissioners' court to sell real estate belonging to the county has no application to the action of the court in leasing the public road for oil purposes. The county did not own the minerals lying underneath the road, and the only right conveyed by the lease was the right to use the road for the purpose of extracting the oil and gas. Hence in no sense can the lease be construed as a sale of real estate belonging to the county. Furthermore, it is clear that the action of the court in leasing all the public highways, and thereby surrendering and relinquishing to the lessees at their option full dominion over them, cannot reasonably be construed as designed or intended to change or discontinue the roads, by virtue of the powers given by article 6860, or as a mere act of such control or superintendence over them as is authorized by article 2241 of the Statutes, even though it should be further held that article 6861 of the Statutes has no application to such roads as have been acquired by the county by purchase and not by condemnation proceedings.

As noted already, not only will a considerable portion of the public road be utilized by the lessees in their drilling operations at the present location of the derrick and well, to the exclusion of the public therefrom, but the testimony was sufficient to show that such use will seriously interfere with public travel, since it will tend to frighten teams and prove dangerous to the public passing in automobiles. And the same results will necessarily follow from any other well upon any public road.

But since the lessees have acquired from the owner of the fee simple the right to the oil and gas at the particular place where the

214 S.W.—39

well has been started, they have the same rights, if any, the owner of the fee would have to drill a well at that place if such owner held the same lease from the commissioners' court of the county; and the question then is, has the commissioners' court of a county the legal authority to give to the owner of the fee the right to obstruct the public highway in the manner the lessees are proposing to do? No such authority is specifically given by the statutes, and we think it clear that none is implied from any of the statutes. Moreover, it is clear from practically all the authorities that the commissioners' court has only such authority pertaining to public highways as is given by statutes. In Travis county v. Trogdon, 88 Tex. 302, 31 S. W. 358, our Supreme Court said:

"And because it is one of the functions of government to establish and maintain public roads, and, no matter through what agency such function is exercised, the roads are the property and for the use of the state, which, through its Legislature, has absolute control over the same, which control it may or may not, from time to time, delegate to the local authorities."

See, also, Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288; Stevens v. City of Dublin, 169 S. W. 188; Von Rosenberg v. Lovett, 173 S. W. 508; State v. Berdetta, 73 Ind. 185, 38 Am. Rep. 117.

Not only is there no express authority given by our statutes for the leasing of the public highways for oil and gas wells which will necessarily prove to be obstructions thereof, but a denial of such authority is clearly implied by article 812 of our Penal Code, which makes it a misdemeanor punishable by fine for any one to willfully obstruct any public road or highway in this state; and in Cornelison v. State, 40 Tex. Cr. R. 159, 49 S. W. 384, our Court of Criminal Appeals affirmed a judgment of conviction of Cornelison for building a fence from his inclosure on one side of the road to a bridge crossing a creek, thus obstructing passage over about eight feet of the right of way into the creek, the banks of which were so steep as to render passage thereover impossible.

By the terms of the lease, the lessees were given the right to appropriate the entire width of the right of way at any place they may desire to do so, and thereby to force an abandonment of the road at that place for public uses, and the acquisition of a new right of way in lieu of the old, regardless of whether or not the public interests may thereby be subserved. In other words, the statutory authority given the commissioners' court to discontinue or abandon a public road has been delegated to the lessees, and that, too, without regard for the right of the public to use them as highways for travel. Certainly no statutory authority can be found thus to delegate the functions of such public

officials. The following is said in Elliott on Roads and Streets, § 645:

"Public highways belong from side to side and end to end to the public, and any permanent structures or purpresture which materially incroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public."

In 3 Dillon on Municipal Corporations, § 997, the following is said:

"A city cannot, as landlord or lessor, make a lease of real estate owned by it, which is held for public purposes, when the making of such lease is inconsistent with these purposes."

See, also, numerous decisions collated in 25 L. R. A. (N. S.) p. 400, which are in accord with the rule just quoted from Dillon. The following is from 13 R. C. L. p. 251:

"The primary and paramount object in establishing and maintaining streets and highways is for the purpose of public travel, and the public and individuals cannot be rightfully deprived of such use, nor can the rights of the public therein be encroached upon by private individuals or corporations, even with the consent of the municipality. Any occupation of them for other purposes, or any appropriation of them by a legislative sanction to other objects, must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed."

Also on page 253:

"The right to use the highways and streets for purposes of travel, however, is not an absolute and unqualified one, but may be limited and controlled by the state in the exercise of its police power, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it."

The following is quoted from 15 Corpus Juris, p. 537:

"In accordance with the general rule heretofore stated, that county boards or county courts have no powers other than those conferred expressly or by necessary implication, such courts or boards have no power to rent or to lease property or franchises owned by the county, in the absence of statutory authority so to do, and, where they do possess statutory authority, it must be strictly pursued, or the lease will not be binding."

In 1 Thornton on Oil and Gas, p. 502, the following is said:

"Yet it would seem that the owner of minerals beneath a highway may remove it if he can do so without any interference with the public in the use of such highway, but this is a rule of little or no practical value in the cases of oil and gas, for an oil or gas well must necessarily be an obstruction of the highway when sunk in it, and especially the machinery used in sinking and operating it, and therefore it is practically impossible to make use of the highway in order to extract oil or gas beneath its surface. As the public authorities only have the right to use the highway for the purpose of the public in traveling, they have no power to let any part of it for oil or gas operations, unless especially authorized by statute to do so, and then only when the public own the fee."

We do not think the following authorities cited by appellant are in conflict with the foregoing: In the case of Rische v. Texas Transp. Co., 27 Tex. Civ. App. 33, 66 S. W. 324, and the case of Texarkana & Ft. S. Ry. Co. v. T. & O. Ry. Co., 28 Tex. Civ. App. 551, 67 S. W. 525, it was held that a city could grant a railway company the right of way over a public street, and that an abutting property owner could not complain, since the grant was only for an additional easement. In the case of Royse Independent School Dist. v. Reinhardt, 159 S. W. 1010, it was held that the trustees of an independent school district had authority to permit the school grounds to be used for private purposes during the period of time intervening between the close of school in the spring and the beginning of the term in the following fall, when for such use a financial advantage would be acquired by the district and the property would not be injured. In the case of Scott v. City of Marlin, 25 Tex. Civ. App. 353, 60 S. W. 969, it was held that under a statute giving a city exclusive control over public streets such a city has authority to curtail the width of a street. In the case of Charles v. Phillips, 179 Ky. 838, 201 S. W. 313, by the Court of Appeals of Kentucky, it was held that a county through its fiscal court could lawfully grant to an individual the privilege of using a part of the highway as a tramway for hauling logs, "provided such occupancy by the individual does not interfere with the free use of the public." In the case of Ontario National Gas Co. v. Gosfield, 18 Ontario App. 628, an oil lease upon a part of the public highway was upheld, but that decision was predicated upon a statute which expressly authorized such action by "a corporation of any township or county" if such corporation considered it expedient to grant such a lease.

[2-4] An assignment is presented challenging the right of plaintiffs to maintain this suit. In their petition in the trial court plaintiffs alleged that they owned the fee-simple title to various tracts of land abutting on the public roads of the county, but none of those tracts were described or their specific locations indicated. Neither by exception to plaintiffs' petition nor by special plea did the defendants present the question of the right of plaintiffs to maintain the suit. It is a general rule, well recognized, that a suit for relief from a public nuisance such

as the proposed obstruction of the public highways of the county, cannot be maintained by individuals alone, suing as such, unless they can show some special injury to them which is not suffered by the public at large. If the allegations in plaintiffs' petition be true, that they own the fee-simple title to lands abutting on different public roads, and that producing oil wells on the adjoining roads will drain the oil from such lands, then they will sustain a special injury by reason of said wells not suffered by the public at large. Therefore it cannot be held that the suit should have been abated in its entirety, as contended by this assignment, even though it should be said that it could have been abated in so far as it pertained to other portions of the highways which do not adjoin lands owned in fee simple by plaintiffs. Furthermore, it must be remembered that the very officers of the law who were charged by statute with the duty to preserve the public highways for the use of the public alone were made defendants; and they not only joined the lessees in the trial court in contesting plaintiffs' right to injunctive relief, but they have also joined the lessees in this appeal. Comanche Co. v. Burks, 166 S. W. 470, and authorities there cited; Ort v. Bowden, 148 S. W. 1145. Further still, after appellants had in their answer expressly invited the court to grant the injunction with respect to all parts of the highways except those portions where the county owned only an easement and the lessees have acquired the mineral rights from the owners of the fee, they are in no position to complain now that the suit should have been abated in its entirety upon the ground above noted.

By another assignment complaint is made of the refusal of the trial judge to transfer the case to the district court of the Seventy-Eighth judicial district in order that appellants might have a more speedy trial of it on its merits. Since it now appears that such transfer will not be required to accomplish the end sought by appellants, the assignment will be overruled without a discussion of its merits.

From the foregoing conclusions it follows that the order of the trial judge from which the appeal has been prosecuted should be affirmed, and it is so ordered.