**TRIBBLE et al. v. DALLAS RY. & TERMINAL CO. et al. (No. 10388.)**

Court of Civil Appeals of Texas. Dallas.
Jan. 20, 1929.

Rehearing Denied Feb. 23, 1929.

S. P. Sadler, of Dallas, for appellants.

Beall, Worsham, Rollins, Buford & Ryburn, J. J. Collins, and H. P. Kucera, all of Dallas, for appellees.

LOONEY, J. Appellants, plaintiffs below, sought injunctive relief, temporary and permanent, against Dallas Railway & Terminal Company, a street railway corporation, to prevent it from constructing and operating a car line over a strip of land 60 feet wide by 720 feet long, being a part of Tremont street, in Junius Heights addition to the city of Dallas. Plaintiffs claim that they own lots in the addition that abut on the part of the street above mentioned, and that

they own said strip by fee-simple title, have a perpetual private easement therein, and are entitled to prevent its use as a public street. They alleged further that, by authority of the city of Dallas, the company was threatening to build and operate its street car line over the land, which if done will obstruct and interfere with its future use by plaintiffs, will constitute an appropriation of and be an additional burden upon same, wholly without authority from, or compensation to, them.

In its answer, the street railway company contended that plaintiffs were not entitled to the relief sought, because the strip of land was a part of the public street system of the city of Dallas, by dedication, express and implied, by prescription, and that plaintiffs had estopped themselves to deny such fact; that the city, having exclusive control, had authorized, in fact ordered, defendant to construct its line over the street; and that defendant was proceeding with the work of extension when interrupted by temporary injunction. The city of Dallas intervened, and combated plaintiffs' suit, claiming that the strip of land was a public street by dedication, both expressed and implied, also by prescription, and that plaintiffs were estopped to deny such fact; that, under its charter, absolute dominion was given it over its streets; that the proposed use of same by the street railway company is entirely lawful, and will not constitute a taking of property nor impose an additional burden on the land within the meaning of the Constitution.

The case was tried without a jury, and resulted in a decree dissolving the temporary writ, theretofore issued, and refusing plaintiffs the permanent relief sought, from which they have appealed.

The record discloses that the city of Dallas, by an order entered March 23, 1927, required defendant company to extend its line over Tremont street, including the strip of land in question. The company was preparing to obey the order, was ready to begin the work of extension, and would have completed same, but for the injunction.

The first question for consideration is: Was this strip a part of the street system of the city of Dallas at the time the order was made? We think so, for the following reasons:

Plaintiffs' claim of ownership and interest in the land is based on certain language contained in deeds executed prior to November 4, 1909, by Highland Realty Company, the common source proprietor, conveying to them, and to their predecessors in title, the lots they now own that abut on the strip in question. The language employed is as follows: "It is expressly agreed and understood, however, that the strip of land 60 feet wide and adjoining the above described property on the S. E. is not a public street and has not been dedicated to public use, but that

the same is the private property of the grantor, it being expressly understood, however, that grantee herein is hereby conveyed a perpetual easement over, along and upon said strip, the said easement to run with * * *" the particular lot conveyed.

■ This language forbids the idea that any interest in the strip of land, other than a private easement, was conveyed, as the fee was expressly retained by grantor. Subsequently, on November 24, 1909, Highland Realty Company, by warranty deed, conveyed the land to J. S. Kendall, who, on the same day, executed and had recorded in the deed records of Dallas county a formal dedication of same to the public for use as a street. The language of dedication is as follows: "* * * That I, J. S. Kendall, * * * do hereby adopt the sub-joined map as the plat of Junius Heights Second Addition to the City of Dallas, Texas, and do hereby dedicate to the public use forever the streets and alleys indicated and shown upon the said plat."

One of the streets indicated on the plat is Tremont avenue, of which the strip 60x 720 feet forms a part.

■ Through conveyances from realty company to plaintiffs and their predecessors, a private easement in the strip was vested, and through the conveyance from realty company to Kendall and the dedication by Kendall to public use, a public easement in the strip vested in the city as the organized representative of the public. These interests are not conflicting, and may exist in harmony at same time. Dealing with similar facts, in the case of Dallas Cotton Mills v. Industrial Co., 296 S. W. 503, 504, the Commission of Appeals used this language: "The right which the city acquired was that of a public easement; the right which the individual purchaser acquired was a private easement. The two could exist in contemporaneous and harmonious operation, or the one could be destroyed without necessary impairment of the other."

So, we conclude that, the private easement in the strip acquired by plaintiffs from Highland Realty Company did not prevent its being later dedicated to public use, as a street, by the owner of the fee. The city, under its charter, was entitled to exclusive control, and in the interest of the public, was authorized to permit, and even require, defendant railway company to extend its line over same.

The evidence also showed that plaintiffs, by implication, dedicated whatever interest they owned in the strip to the public as a street, and are now estopped to deny the fact.

■ This street was macadamized with rock and gravel prior to the opening of Junius Heights addition, and has been continuously used by the public as a street since 1909, without protest or objection from plaintiffs.

After the addition became a part of the city on November 30, 1918, the authorities assumed control of the streets of the addition, worked, graded, and drained them. Prior to 1924, plaintiffs and other abutting property owners asked the city by petition to have "Tremont Street" paved, including the strip in question. The city granted the petition, advertised for paving bids, let the contract, enacted all necessary ordinances fixing liens, etc., on abutting property, and paid from public funds all costs of the proceedings and for paving street intersections. These facts show conclusively that plaintiffs recognized the strip as a part of Tremont street, for only on this basis were they justified in petitioning the city to have same paved.

 Our courts recognize the doctrine that a dedication of land to public use need not be shown by deed, nor by public use for any particular length of time, it being only sufficient to show unequivocal acts or declarations of the proprietor, dedicating same to public use, and where others act on the faith of such manifested intention, the proprietor will be estopped to deny the dedication or to make any future use of the property inconsistent with any purpose for which the land was dedicated. See Oswald v. Grenet, 22 Tex. 94, 99; Lamar County v. Clements, 49 Tex. 347, 357; Orrick v. City of Fort Worth (Tex. Civ. App.) 32 S. W. 443; City of Kaufman v. French (Tex. Civ. App.) 171 S. W. 831, 834; City of San Antonio v. Sullivan, 4 Tex. Civ. App. 451, 23 S. W. 307, 308; Money v. Aiken (Tex. Civ. App.) 256 S. W. 641, 642; Grace v. Walker, 95 Tex. 39, 64 S. W. 930, 65 S. W. 482.

We therefore hold that, by acquiescence by unequivocal acts, inducing the city to pave in part at public expense, plaintiffs dedicated whatever interest they owned in the land to the public for use as a street, and are now estopped to gainsay that fact.

Furthermore, we find that the evidence established a prescriptive right in the city to use the strip of land as a part of its street system.

 The evidence is uncontradicted that, without objection, plaintiffs acquiesced in the open and continuous use, by the public, of the strip as a street for more than 10 years prior to the institution of this suit. The law is well settled that a road or street becomes a highway by prescription when the owner, or his predecessors in title, permits the public to use same openly, continuously, and uninterruptedly for 10 years. See Money v. Aiken (Tex. Civ. App.) 256 S. W. 641, 642; Evans v. Scott, 37 Tex. Civ. App. 373, 83 S. W. 874, 877; Gulf, C. & S. F. R. Co. v. Bryant (Tex. Civ. App.) 204 S. W. 443, 444; Galveston, H. & S. A. R. Co. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541, 543; Gulf, G. & S. F. R. Co. v. Bluitt (Tex. Civ. App.) 204 S. W. 441, 442; Wheeler v. McVey (Tex. Civ. App.) 164 S. W. 1100, 1102.

The record further discloses that Mrs. Bess W. Jones, formerly the wife of J. S. Kendall, deceased, took at his death whatever right he owned in the land, and on May 30, 1927, just prior to the institution of the suit, joined by her present husband, quitclaimed the strip to plaintiffs.

In view of facts heretofore brought under discussion, it is evident that the interest conveyed by Mrs. Jones by this quitclaim deed was at the time burdened with a public easement, was a public street, and under the exclusive control of the city of Dallas.

Plaintiffs insist, however, that they showed such an interest in the land, through conveyances from Highland Realty Company and the quitclaim deed from Mrs. Jones, as entitled them to an injunction, prohibiting the company from placing and operating its line over the land, claiming that same will constitute an additional burden. upon and a taking of their property for public use, without their consent and without compensation.

 The law is definitely settled in this state to the effect that the construction and operation of a street car line for passenger traffic, on public streets of a city, does not impose an additional burden upon land, nor constitute such a taking of or damage to property within the meaning of the Constitution as entitles the owner to compensation. See Texas & P. Ry. Co. v. Rosedale, etc., Co., 64 Tex. 80, 83, 53 Am. Rep. 739; San Antonio, etc., Co. v. Limburger, 88 Tex. 79, 85, 30 S. W. 533, 53 Am. St. Rep. 730; Aycock v. San Antonio, etc., Ass'n, 26 Tex. Civ. App. 341, 63 S. W. 953, 955; Rische v. Texas Transp. Co., 27 Tex. Civ. App. 33, 66 S. W. 324, 327.

Having carefully considered all assignments and propositions urged for reversal, and finding no error, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

 Among other grounds urged by appellants for rehearing is this: "VI. This court erred in holding, that the strip 60 by 720 feet was macadamized with rock and gravel prior to the opening of Junius Heights Addition, and has been continuously used by the public as a street since 1909, without protest or objection from the appellants, because there is no evidence in this record to sustain such finding and holding of this court."

The statement of facts discloses that Junius Heights addition was opened prior to 1909, and on November 24th of that year, the then owner of the fee executed and had recorded in the deed records of Dallas county a formal dedication, to the public forever, all streets and alleys of said addition as per plat. One of the streets shown on the plat is Tremont, which includes the strip 60 by 720 feet in controversy.

Without reciting other evidence, we quote from appellants' own witness, Metcalf, who testified: "The street (referring to Tremont) was macadamized when the addition was put on; macadamized with white rock and gravel up to the gutters. That was for the full 720 feet and further; I think it extended all the way, as I remember, to the end of that street. 720 feet—that was done by the people who put on the addition."

At another place in his testimony, this witness said: "This street continued as a macadamized street until the city paved it with the present pavement. In a way, it was generally passable and was used by vehicles and people from the time it was paved to the present time; used by the public generally, just as any other street was used. It was open for the last fifteen years; the street has been open continuously. We have allowed it to stay open and the public has used it during that time. They never have asked our permission to use it, and we have never said anything to them about it."

He also said: "With reference to my testimony awhile ago, that the paving by the owners and that the street has been traveled by the public since that time, and as to whether I was referring to the pavement on it now or the old pavement, I spoke of all of it. I suppose it had never been closed; the street has never been closed to anyone; there has been no protest to keep anyone coming over the street."

Thus it is shown that this finding of the court is abundantly supported by the evidence.

Appellants also challenge the correctness of another conclusion of this court, as follows: "VII. This court further erred in holding, that Tremont Street was paved, including the strip in question, with public funds, because there is no evidence that sustains such finding and this finding is directly contrary to the facts testified to and directly contrary to the evidence in the record."

This assignment alleges, by implication at least, that we found the street was paved altogether with public funds. We made no such finding. We did find that: "Prior to 1924, plaintiffs (appellants) and other abutting property owners, asked the city by petition to have Tremont Street paved, including the strip in question. The city granted the petition, advertised for paving bids, let the contract, enacted all necessary ordinances, fixing liens, etc. on abutting property, and paid from public funds all costs of the proceedings and for paving the intersections."

At another place in the opinion, we said: "We therefore hold that, by acquiescence, by unequivocal acts inducing the city to pave in part at public expense, plaintiffs dedicated whatever interest they owned in the land to the public for use as a street, and are now estopped to gain-say that fact."

Without referring to any other evidence, this finding is abundantly sustained by the agreement of parties, as follows: "It is agreed that the City of Dallas, at the special instance and petition of the property owners abutting on the strip of land or street in controversy, instituted paving proceedings in ——— 1924, that the City of Dallas advertised for bids for the paving and that it duly received bids and awarded the contract to Smith Bros., and that Smith Bros., in pursuance of that contract paved the street and that the City of Dallas duly passed an ordinance levying assessments against the respective property owners for their pro-rata share of the cost of the improvement and fixed liens in favor of Smith Bros., against the respective parties, that the City of Dallas paid for the paving of the street intersections."

We have considered all grounds urged by appellants for rehearing and finding no reason for changing our decision, the motion is overruled.

Overruled.