MORDHURST *v.* FT. WAYNE & SOUTHWESTERN TRACTION COMPANY.

[No. 19,950. Filed July 1, 1904.]

INTERURBAN RAILROADS.—*Threats of Violation of Contract with City.—Injunction.—Additional Servitude.*—Where an abutting lot owner charges in his complaint that the city has granted to the defendant, an interurban railway company, the privilege of constructing a track in the street in front of the plaintiff's lots, and of operating its cars thereon; including passenger-coaches and coaches for United States mail, and express and light baggage, and that such city may allow such company to couple together two or more cars; that said company has not condemned a right of way nor paid the plaintiff any damages; that it threatens to dig up the street and lay its track, and run heavy cars, and carry many passengers and much freight, at all hours of day and night, and make noise, shake and jar the plaintiff's houses, impede ingress and egress, and be a continual nuisance, such complaint is not good for an injunction,

Mordhurst v. Ft. Wayne, etc., Traction Co.

provided such use does not constitute an additional servitude, for the reason that it can not be presumed, even though so charged, that a public service company will violate its contract with the city. *pp. 272, 273.*

INTERURBAN RAILROADS.—*Additional Servitude.*—Where a city council grants to an interurban line the right to construct its track over and upon a street, with privilege of running passenger-coaches and mail and light express coaches, operated by electricity, such right does not constitute an additional servitude upon the property of the abutting lot owner. *pp. 275-277.*

SAME.—*Special Injury.*—For any special injury to his property by reason of the construction of an interurban railroad in the street in front thereof, an abutter may maintain his action at law, but can not until after the happening of the injury. *p. 281.*

MUNICIPAL CORPORATIONS.—*Cities.—Streets.—Dedication.—Future Uses.*— Streets of a city are dedicated not only for uses known at the time of such dedication, but for all prospective and future public purposes, and which are not actually detrimental to the abutting real estate. *p. 280.*

From Allen Circuit Court; *E. O'Rourke*, Judge.

Action for an injunction and damages by Henry W. Mordhurst against the Ft. Wayne & Southwestern Traction Company. From a decree for defendant, the plaintiff appeals. *Affirmed.*

*J. M. Barrett* and *S. L. Morris*, for appellant.
*Walter Olds* and *N. D. Doughman*, for appellee.

DOWLING, J.—This suit was brought by the appellant against the appellee to enjoin the latter from constructing and operating an interurban railway over that part of Fulton street, in the city of Ft. Wayne, upon which a lot owned by appellant abuts, no compensation for such appropriation and use of appellant's interest in the land so appropriated having been assessed and tendered. A demurrer to the complaint for want of sufficient facts was sustained, and, upon the refusal of the plaintiff below to plead further, judgment was rendered upon the demurrer. From this judgment the plaintiff appeals, and he assigns the ruling on the demurrer for error.

Greatly condensed, the material facts stated in the complaint are these: The plaintiff is, and for several years has been, the owner in fee simple of lot number six, in

block twenty-three, in Ewing's addition to the city of Ft. Wayne. On said lot there are four large and expensive houses fronting on Fulton street, used as residences. Said lot number six abuts upon the east line of said street for a distance of 150 feet, and the plaintiff, as such abutting owner, has title to all that part of said street opposite his said lot to the center line of said street, subject only to the public easement therein for the usual and ordinary purpose of a street. The defendant is an interurban railway company, organized under the laws of this State for the purpose of constructing and operating an interurban railroad system in said city of Ft. Wayne and its vicinity, and from thence to the cities of Huntington, Wabash, and such other cities and counties in this State as the defendant may select, and to connect at such cities and counties with other railroads in this and other states. Said line is already constructed from the city of Ft. Wayne to the city of Huntington, and is being operated by the defendant. The extension of said line from the city of Huntington to the city of Wabash is now being built, and is nearly completed, and the defendant intends to extend its railroad to other cities and counties in this State. By the law of this State the defendant is authorized to transport persons and all kinds of property on its cars along the streets of the cities in which its railroad is constructed, by such force and power as such cities may permit, to receive tolls and compensation for such service, and, if necessary, to acquire real estate for the use of such company by appropriation and condemnation. The city of Ft. Wayne, by its board of public works, on December 13, 1900, granted to George Townsend, William S. Reed, and Charles C. Miller, and to their successors and assigns, permission to lay a single track for an interurban street passenger railway line, with the right to haul express matter, mail, and passenger baggage in connection therewith, to be operated by electricity, or other improved power, to be approved by said board of public

works, with all proper and necessary turnouts, wire, poles, etc., in and upon said Fulton street, and other streets of said city of Ft. Wayne, and over that part of said Fulton street on which plaintiff's lot abuts. Said railway is to be constructed from the city of Ft. Wayne to the city of Huntington, a distance of twenty-five miles. By the terms of the said grant from the city of Ft. Wayne the motive power is at all times to be ample and of the approved kind. The cars are to be of the best pattern; they are to be kept clean, well ventilated, seated, heated, and lighted; they are to be kept painted and decorated outside and inside, so as to present an attractive appearance; they are to be designated as express and passenger-cars; the express-cars are to be used exclusively for light express matter, passengers' baggage, and United States mail matter; the passenger-cars are to be used for hauling passengers, baggage, light express matter, and United States mail combined. Unless expressly authorized by the board of public works no train of more than one car shall be run over said line, but said board, upon the petition of the said company, may permit two cars to be run. The said company is required to permit other interurban or suburban companies, empowered by the common council or board of public works of the city of Ft. Wayne, to use the streets of that city for the transportation of passengers, express, and United States mail, to use its tracks, etc. The contract between the board of public works of said city of Ft. Wayne and the said Townsend, Reed, and Miller, was assigned to the defendant, but such assignment was not reported to or approved by said board. The defendant is claiming that it is not prohibited by its agreement with the city, nor by any ordinance of said city, from carrying freight or any kind of property on its railroad through said streets. Plaintiff has never consented to the use or appropriation of said Fulton street in front of his premises by said defendant. No attempt has been made to obtain his consent to such

appropriation and use. No condemnation proceedings
have been taken by the defendant to acquire any rights in
said street, and no damages have been tendered to the
plaintiff for such appropriation of said street in front of
his said lot. The defendant threatens to enter upon the
plaintiff's premises on said street, and to construct its said
railroad, to lay down T rails, such as are used by steam
railroads, to erect poles, string wires, etc., and to maintain
the same on said street and on plaintiff's said premises.
Said railroad will not facilitate or aid the usual traffic on
said street, but is intended to and will gather up a large
amount of heavy freight and traffic from different parts
of the country in cars constructed and intended only to
carry such freight, which will be carried by the defendant
along said Fulton street, and over plaintiff's said premises,
in heavy cars and trains, at all hours of the day and night,
which, in the absence of said railroad, would never be car-
ried along said street, and said defendant will thereby pre-
vent and destroy the usual and ordinary travel and traffic
on said street. The construction and operation of said
railroad by the defendant will create great and unusual
noises and dust, which will be carried by the winds into
plaintiff's said residences; will shake and jar said dwell-
ing-houses so as to make them unfit for the purposes for
which they were designed; will seriously impede and en-
danger ingress to and egress from plaintiff's said premises,
and diminish their value to the extent of $10,000. The
appropriation and use of the street by the defendant will
be a continual nuisance, and will damage said premises as
aforesaid. The complaint concludes with a prayer that
the defendant be enjoined from excavating said street, con-
structing a railroad thereon, and from operating and using
the same for the transportation of freight, merchandise,
express, or mail matter on the cars of the defendant along
said Fulton street over plaintiff's premises, and for dam-
ages in the sum of $10,000.

The board of public works of the city of Ft. Wayne was empowered by the statute under which that city was incorporated to prescribe 'the terms and conditions upon which any railroad company should use the streets of that city for the construction and operation of its railroad. §4117 Burns 1901, Acts 1893, p. 202, §63, amended by Acts 1899, p. 138; Dillon, Mun. Corp. (4th ed.), §706. Such board did enter into a contract with the defendant below, and the rights, powers, and duties of the defendant in the construction and operation of its railroad on and through the streets of the city were defined and fixed by that agreement. It will not be presumed that the railroad company will violate its contract, and an allegation of the complaint that it intends to do so, in advance of any act of the company constituting such violation, can not prevail against the presumption of good faith and fair dealing. "The burden is on the appellant to rebut this presumption by bringing forward countervailing facts, not by pleading bare conclusions or recitals. Facts are requisite to constitute a cause of action, and they are wanting in this instance." *Lostutter* v. *City of Aurora* (1890), 126 Ind. 436, 439, 12 L. R. A. 259. See, also, *Aurora, etc., R. Co.* v. *City of Lawrenceburgh* (1877), 56 Ind. 80; *Aurora, etc., R. Co.* v. *Miller* (1877), 56 Ind. 88; *State, ex rel.,* v. *Kingan* (1875), 51 Ind. 142.

To determine the sufficiency of the grounds upon which the right of the plaintiff rests, we must look to the contract between the city and the railroad company, and not to the allegations of expected violations of that agreement by the company. If the use of the streets by the defendant in the manner and upon the conditions described and set forth in the contract would not create a new and additional burden upon the street, and a deprivation of the plaintiff's beneficial interest therein, then he is not entitled to an injunction against the construction of the railroad. Future

breaches of that contract, or violations of its terms by the company, resulting in special damage to the property of the plaintiff, may hereafter entitle him to maintain an action against the company for such injuries, but the mere anticipation of such breaches and injuries can not authorize the court to enjoin the construction and operation of the railroad. It is important, then, to ascertain from the agreement itself what rights in the use of the streets, and in Fulton street among them, were · granted to the railroad company, and upon what conditions the company was authorized to use these streets.

It appears from the complaint that the contract with the city authorized the railroad company to lay and maintain a single track for an interurban street passenger railway line on and along certain streets and avenues of the city, including Fulton street. The kind of rail to be laid was not specified, and a T rail, such as is used by steam and other railroads, may be adopted. The company was also granted the privilege of constructing, erecting, and maintaining, in connection with its said railroad, all necessary turnouts, switches, feed wires, and poles. The road is to be operated by electricity, and the power is at all times to be ample, and of the approved kind. The cars are to be of the best pattern, with all usual conveniences for the comfort of passengers. They are to be painted and decorated on the outside, and are always to be kept in repair and made attractive in appearance. They are to be designated as express and passenger-cars. The former are to be used exclusively for hauling light express matter, passenger baggage, and United States mail. The latter are to be used, exclusively, for the transportation of passengers and baggage, light express matter, and United States mail combined. No train consisting of more than one car is to be run over said railroad except that, upon petition of the company, the board of public works may authorize the running of a train of two cars.

Will the construction and operation of such a railroad in the manner prescribed, and subject to the conditions and requirements we have set out, infringe upon the rights of the plaintiff in. Fulton street opposite his property, and will it, if so constructed and operated, deprive him of any beneficial interest in the street to which he is entitled? The question is a very practical one, and is to be determined by the facts of the case, and not upon any mere theory or fiction of law. If constructed and operated in the manner described, in what essential particular will the defendant's railroad differ from an ordinary electric street railroad? Both kinds of roads, when deemed necessary, use the T rail, and their cars are propelled by the same motive. power. The carriage of light express matter, passenger baggage, and mail matter upon street cars would not constitute ground of complaint on the part of abutting lot owners. If only one car is run, the street is occupied and obstructed by it to no greater extent than it would be by a street car. If two constitute a train, they will take up no more space and do no more injury than a motor-car and trailer, which are commonly run upon street railroad tracks when the business of the company requires such additional car. The fact that light express matter, passenger baggage, and. United States mail matter are carried on a car does not affect the property owner, nor injure his property. The transportation of articles of this kind does not create any resemblance between the interurban electric railroad and a steam railroad carrying ordinary goods and merchandise, and results in none of the annoyances and injuries which are caused by either passenger or freight-trains on such a railroad.

Trains on steam railroads are drawn by locomotives of enormous size and weight, which constantly emit smoke, sparks, cinders, and steam, and which drop coals of fire from their fire-boxes. Their passenger-trains usually consist of an express and baggage-car, and from one to many

large and heavy passenger coaches. Freight-trains, as commonly made up, contain from one to twenty-five or thirty large, roughly constructed cars for the transportation of coal, stone, iron, coal oil in tanks, lumber, live stock, and other heavy merchandise of every description. Such trains, so propelled, unavoidably fill the atmosphere in their vicinity with dust, smoke, and steam, make much noise when running, stopping and starting, seriously obstruct the streets and street crossings, and, for considerable periods every day, to a great extent, exclude other travel and traffic from the streets on which they are moved. A fair comparison of the incidents and consequences attending the running of a single interurban electric car carrying passengers and baggage, light express matter, and United States mail matter over the streets of a city, or resulting therefrom, with the real and substantial annoyance, inconvenience, danger, and injury to property attending the operation of passenger and freight-trains on steam railroads, will demonstrate that most, if not all, the ills and injuries anticipated from the former are imaginary, or, at least, greatly exaggerated.

The defendant is authorized by its agreement with the city of Ft. Wayne to run a single electric car over its tracks in that city, and to carry on such car passengers and the articles specified in the agreement. Upon petition, the use of two cars in a train may be permitted. On the narrow basis of these facts, the plaintiff alleges that the proposed interurban railroad will gather up a large amount of heavy freight and traffic from different parts of the country; that it will use heavy freight-cars and trains at all hours of the day and night; that it will prevent and destroy the ordinary travel and traffic on Fulton street; that it will create great and unusual noises and dust, which will be carried into plaintiff's residences; that it will shake and jar said dwelling-houses, so as to render them unfit for use; and that it will seriously impede and endanger ingress to and

egress from the said dwellings. The premises entirely fail to support the conclusions drawn from them.

It will be seen that the plaintiff was not content to rest his case upon the proposition that the defendant could not acquire the right to construct and use the street on which plaintiff's lots abut for the purposes of an interurban street railroad without the consent of the plaintiff, or compensation first assessed and tendered or paid, but he attempts to set forth reasons why such privilege should not be granted by the city or exercised by the defendant. It is apparent that every objection founded upon injury to his property rights which the plaintiff can justly urge against the use by the defendant of Fulton street in front of plaintiff's lots would apply with equal force to the use of that thoroughfare by an electric street railroad constructed and operated wholly within the city limits. But this court has held that such a street railroad is not an additional burden upon the street, and that the owners of abutting real estate are not entitled to compensation on account of such appropriation and use. *Eichels* v. *Evansville St. R. Co.* (1881), 78 Ind. 261, 41 Am. Rep. 561; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 303, 304, 26 L. R. A. 337, 47 Am. St. 264; *Brown & Co.* v. *Duplessis* (1859), 14 La. Ann. 842; *Nichols* v. *Ann Arbor, etc., St. R. Co.* (1891), 87 Mich. 361, 49 N. W. 538, 16 L. R. A. 371; *Newell* v. *Minneapolis, etc., R. Co.* (1886), 35 Minn. 112, 27 N. W. 839, 59 Am. Rep. 303; *Montgomery* v. *Santa Anna, etc., R. Co.* (1894), 104 Cal. 186, 37 Pac. 786, 25 L. R. A. 654, 43 Am. St. 89; *Rafferty* v. *Central Traction Co.* (1892), 147 Pa. St. 579, 23 Atl. 884, 30 Am. St. 763; *People, ex rel.,* v. *Ft. Wayne, etc., R. Co.* (1892), 92 Mich. 522, 52 N. W. 1010, 16 L. R. A. 752.

It is equally well settled on the other hand that a railroad corporation can not construct a common passenger and freight railroad upon the streets of a city in the absence of a license from the abutting lot owners without compen-

sation first assessed and paid or tendered. *Tate* v. *Ohio, etc., R. Co.* (1856), 7 Ind. 479; *Cox* v. *Louisville, etc., R. Co.* (1874), 48 Ind. 178; *Terre Haute, etc., R. Co.* v. *Rodel* (1883), 89 Ind. 128, 46 Am. Rep. 164; *Inhabitants of Springfield* v. *Connecticut River R. Co.* (1849), 4 Cush. 63. This distinction does not rest upon a difference in name—one being denominated a street railroad or a passenger railroad, and the other a commercial or freight railroad—nor upon the motive power employed, nor upon the kind of rail used, nor upon the length of the railroad. It results from the nature of the business done by each of the two kinds of railroads, and the physical agencies and manner by which and in which that business is carried on. Those of the one are consistent with the use of the street by the lot owner and the general public, and, if not directly beneficial to the abutting real estate, are not detrimental to it. They relieve the streets from some of the burdens of travel upon it, they facilitate travel between different parts of the city, and they enhance the value of abutting property by increasing the convenience of access to it. The business of the other class of railroads, and the means by which it is necessarily carried on, require the service of entirely dissimilar agencies and methods. Great trains of cars moving along the streets, or standing upon them, are real and serious obstructions to all other uses of the highway. Such trains make a loud noise by day and by night, and disturb the quiet of neighborhoods. Access to abutting property is rendered difficult and dangerous, and the jarring and shaking of buildings is annoying to the occupants, and often injurious to the structures themselves. If the cars are propelled by steam, then there is the additional inconvenience of smoke, cinders, sparks, the blowing off of steam, the ringing of the engine bell, and the whistling of the locomotive. There are good and substantial reasons why compensation should be paid

to the owners of abutting lots when a street in a city is used for such a purpose and in such a manner.

If, then, the injuries or inconveniences sustained by the owners of lots abutting on a street on which an interurban electric railroad is constructed are neither different from those resulting from the construction and operation of an ordinary street electric railroad, nor greater in degree, and if the latter is held not to be an additional burden upon the street entitling abutting lot owners to compensation, upon what ground can it be asserted that the proposed interurban railroad is such an additional burden as requires compensation to be assessed and paid or tendered to the owners of abutting lots before the street can be lawfully appropriated and used for the purposes of such railroad? The only basis for a claim for compensation is the circumstance that the interurban railroad is intended for the transportation of persons, baggage, light express matter, and United States mail matter to places outside the city of Ft. Wayne, and at greater or less distances therefrom. The reason given in support of this claim is that while the interurban railroad is, to some extent at least, a new and additional servitude, it is of no local benefit to the abutting property, that it does not aid in carrying forward the local travel or assist in the work of transportation for which the street was designed, and that the passengers and goods carried by it would not, in its absence, have been brought upon the street at all. It is contended that this is a use of the street not contemplated by the landowners who laid out or dedicated the highway.

A street platted or otherwise laid out in a city or town of this State is thereby dedicated to the use of the public, and not exclusively to the use of abutting property, nor to the convenience or profit of any or all of the inhabitants of the particular municipality. It forms a part of the great system of highways of the State, and its use for intercom-

munication with other neighborhoods, towns, and cities is one of its most important purposes. In many respects it is governed by the general laws regulating public ways. Discriminations in the terms and conditions on which it could be used in favor of the abutting lot owners, the residents on the particular street, or the inhabitants of the city, and against nonresidents, could not be tolerated.

The dedication of a street must be presumed to have been made, not for such purposes and usages only as were known to the landowner and platter at the time of such dedication, but for all public purposes, present and prospective, consistent with its character as a public highway, and not actually detrimental to the abutting real estate. *Cater* v. *Northwestern Tel., etc., Co.* (1895), 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. 543; Cooley, Const. Lim. (3d ed.), 556; Elliott, Roads and Sts., 529. The convenience and advantage of all the inhabitants of the city, and of the public at large, must be regarded as the objects contemplated when the street was laid out or opened. A narrower construction would require a sacrifice of the greater interests of the community and the public to the inferior and subordinate claims of the local lot owner and abutter. Such a construction of the law governing the dedication of public streets and the reserved rights of the original landowner and his assigns in the street by unreasonably increasing the cost of rights of way or use would obstruct all progress, and deprive the local community of the benefit to be derived from the advancements of science, invention, and discovery. It would isolate the community to some degree at least from surrounding neighborhoods, towns, and cities, and subject it to many serious inconveniences and privations. This principle has been recognized by this court, and the question can no longer be considered an open one in this State. *Bogue* v. *Bennett* (1900), 156 Ind. 478, 83 Am. St. 212; *Magee* v. *Overshiner* (1897), 150 Ind. 127, 40 L. R. A. 370, 65 Am.

St. 358; *Lostutter* v. *City of Aurora* (1890), 126 Ind. 436, 12 L. R. A. 259; *Eichels* v. *Evansville St. R. Co.* (1881), 78 Ind. 261, 41 Am. St. 561; *Coburn* v. *New Telephone Co.* (1901), 156 Ind. 90; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. Rep. 264; *Chicago, etc., R. Co.* v. *Hammond, etc., R. Co.* (1898), 151 Ind. 577.

Rapid and cheap transportation of passengers, light express and mail matter between neighboring towns and cities may be quite as necessary and as largely conducive to the general welfare of the places so connected and their inhabitants as the like conveniences within the town or city. Where such transportation is furnished by an interurban electric railroad operated under the conditions and restrictions contained in the agreement between the appellee and the city of Ft. Wayne, we do not think the construction and operation of such a railroad in such a manner constitutes an additional servitude upon the street which entitles abutting property owners to compensation.

For any actual and special damage sustained by the abutting lot owner by reason of the construction of the appellee's railroad, or resulting from its use, the lot owner has his remedy by an action at law. Dillon, Mun. Corp. (4th ed.), §712, note 1. The railroad company will be liable to the abutting lot owner for any special injury to his property occasioned by the negligence of the company in constructing its railroad or in operating it. Nothing that we have said in this opinion is to be understood as denying or in any degree abridging that right. *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 7 L. R. A. 257; *Jeffersonville, etc., R. Co.* v. *Esterle* (1878), 13 Bush (Ky.) 667; *Cadle* v. *Muscatine Western R. Co.* (1876), 44 Iowa 11; *Brewer* v. *Boston, etc., R. Co.* (1873), 113 Mass. 52; *Pennsylvania R. Co.* v. *Angel* (1886), 41 N. J. Eq. 316, 7 Atl. 432, 56 Am. Rep. 1; *Baltimore, etc., R. Co.* v. *Fifth Baptist Church* (1883), 108 U. S. 317, 2 Sup.

Ct. 719, 27 L. Ed. 739; *Frith* v. *City of Dubuque* (1877), 45 Iowa 406.

Many decisions of courts of other states are cited by counsel for appellant upon the main question involved in this case. All have been carefully examined and considered, but we failed to find in them sufficient reasons for adopting their conclusions. The grounds assigned are not sufficient to justify us in holding that an interurban electric railroad constructed and operated under the restrictions imposed on the appellee is such an additional servitude and burden upon the street as to require an assessment and payment of compensation to the abutting lot owner as a conditon precedent to the occupancy and use of the street by the company.

The court did not err in sustaining the demurrer to the complaint. Judgment affirmed.