GALVESTON–HOUSTON ELECTRIC RY. CO. et al. v. JEWISH LITERARY SOCIETY. (No. 7173.)

(Court of Civil Appeals of Texas. Galveston. Dec. 23, 1916. On Motion for Rehearing, Jan. 26, 1917.)

1. EMINENT DOMAIN ⬅276—TAKING OF PROPERTY — ADDITIONAL SERVITUDE IN STREET—INTERURBAN RAILROAD.
The operation on existing street railroad tracks and subject to the city ordinances regulat-

ing speed along a public street, the fee of which is owned by the abutting landowners, of an interurban electric railroad carrying passengers and express but no freight, which generally operates single passenger cars weighing about twice as much as ordinary street cars, but sometimes operates a train of two and occasionally three cars, and which is required to carry passengers between points within the city the same as an ordinary street railroad, giving and accepting transfers to other street car lines, though it discouraged passengers who could be served by the regular street cars from riding on its cars, and which operates its express cars, which are lighter than the passenger cars, singly, but does not limit the weight of articles which it will transport thereby, is more analogous to the operation of a street railroad than of an ordinary steam commercial railroad, and does not impose an additional servitude on the abutting property owners which entitled them to restrain the operation thereof until compensation is paid for the taking of their property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 774.]

On Motion for Rehearing.

2. EMINENT DOMAIN ⟨Key⟩315—INJUNCTION—REVIEW—QUESTIONS OF LAW.
The question whether the operation of interurban electric cars along a street imposes an additional servitude on the street, not contemplated in its dedication, is a question of law on which the appellate court is not bound by the decision of the trial court.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 829–833.]

3. APPEAL AND ERROR ⟨Key⟩1011(1)—REVIEW—FINDINGS OF FACT.
The appellate court cannot make a finding of fact contrary to the finding of the trial court if there is any conflict in the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988.]

4. APPEAL AND ERROR ⟨Key⟩1012(1)—REVIEW—FINDINGS OF FACT—WEIGHT OF EVIDENCE.
If reasonable minds could differ as to the fact conclusions to be drawn from the evidence, the appellate court must adopt the findings of the trial court, unless they are against the overwhelming weight of evidence, in which case the appellate court can reverse the judgment and remand for new trial, but cannot substitute its own findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992.]

5. APPEAL AND ERROR ⟨Key⟩931(1)—REVIEW—PRESUMPTIONS—ABSENCE OF FINDINGS OF FACT.
Where the trial judge filed no conclusions of fact, the appellate court must presume that every fact which there was sufficient evidence to support and which was necessary to sustain the judgment was found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3762.]

6. EMINENT DOMAIN ⟨Key⟩302 — NEGLIGENT OPERATION OF STREET CAR—DAMAGES TO PROPERTY OWNER.
In an action in the nature of trespass to try title by the owner of the fee in the street to recover possession of the street, subject only to the use of the public for ordinary street and highway purposes, as against an interurban company operating cars along the street, plaintiff could not recover damages for the negligent operation of the interurban cars in violation of the city ordinances, and the appellate court need not, on reversing the judgment for plaintiff, remand the case to permit plaintiff to amend its petition to claim such damages, but can render judgment for defendant which will not bar an action to recover those damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815, 819.]

7. STREET RAILROADS ⟨Key⟩70—REGULATION—ORDINANCES—CONSTRUCTION.
Where a city ordinance authorized a street railroad company to permit an interurban company to operate its cars over the street car lines within the city, provided that if the local service furnished by the interurban company should be insufficient the city could require the street car company to furnish local service along those lines, and that until it was furnished the interurban company should stop its cars at reasonable intervals for passengers and should carry local passengers at the legally established rate for the street car company and furnish transfers to other street car lines, with a proviso that the interurban company should be under no obligation to furnish such local service if the street railroad had undertaken to do so, and that through cars or trains making through trips should not be required to render such service, the expressions "through cars" and "through trips" in the proviso mean special cars, and does not apply to cars on the regular schedule of the interurban company.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 147½–149.]

8. EMINENT DOMAIN ⟨Key⟩276—ADDITIONAL SERVITUDE—STREET RAILWAY—FREIGHT—EXPRESS.
The question whether goods carried by an interurban electric railroad are express or freight, on which depends whether the railroad is an additional servitude on the street, does not depend on the weight of the separate articles, but on the manner in which they are carried, since the carriage of a few heavy articles would not damage the abutting owners more than the carriage of a large number of lighter articles in the same car.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 774.]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by the Jewish Literary Society against the Galveston-Houston Electric Company and another. Judgment for the plaintiff, and defendants appeal. Reversed, and judgment rendered for defendant in part, and motion for rehearing overruled.

Baker, Botts, Parker & Garwood, C. R. Wharton, and J. C. Townes, Jr., all of Houston, for appellants. S. H. Brashear, of Houston, for appellee.

PLEASANTS, C. J. This suit was filed by the Jewish Literary Society, plaintiff, against the Galveston-Houston Electric Railway Company and the Houston Electric Company, defendants, in March, 1915, in the district court of Harris county, Tex. The suit is in trespass to try title with additional prayer for damages and injunction.

Under date of April 22, 1915, the plaintiff filed its first amended original petition, in which it alleges, in effect:

(1) That the plaintiff is a Texas corporation; that the defendant Galveston-Houston Electric Railway Company is an interurban railway company; and that the Houston

Electric Company is a street railway, both of the defendants being incorporated under, and by virtue of, the provisions of the Texas statutes.

(2) That on April 1, 1913, the plaintiff was the owner and in peaceable possession of certain lands in the city of Houston, Harris county, Tex., described as two tracts: Tract No. 1 being lot 7, in block 122, in the city of Houston (52 feet in width by 100 feet in depth), fronting and abutting upon the city street known as Jackson street; and tract No. 2 being a rectangle 52 feet long and 40 feet ,wide, and· being that portion of said Jackson street immediately adjacent to said tract No. 1 and extending out to the middle of the street.

(3) "That the said tract above described as the second tract is now, and has been for the past 50 years, used as part of a street known as Jackson street, 80 feet in width between property lines, and during all of said time, the plaintiff and its predecessors in title did own to the center line of said street between its property and the properties on the opposite side thereof from it, subject only to the right of the, public to use the same for ordinary street and highway purposes; that is, for purposes of ordinary travel."

(4) Plaintiff claims to own the said portion of Jackson street in fee simple, subject only to the right of the people to use the same for ordinary street and highway purposes.

(5) That on April 1, 1913, the defendants unlawfully entered upon said portion of said Jackson street described as second tract, and built tracks thereon for the purpose and uses of a railroad, using large and heavy cars and trains of cars and carrying large numbers of passengers and large quantities of freight and baggage. That defendants are using said portion of said street for railway purposes, and not for street railway purposes, and have deprived the plaintiff of the full use and enjoyment of said street. That the use made of said street by defendants constitutes an additional burden and servitude thereon to plaintiff's damage in the sum of $5,000.

(6) That said street has never been condemned by the defendants.

(7) That plaintiff has for the past six years maintained a building upon the said city lot abutting upon the street in question and has used same as a literary society and for amusement purposes. That the defendants are operating, upon the street in front of said building, a railroad between the cities of Houston and Galveston and other points. That cars and trains of cars making 40 trips per day pass said building, causing great noise, dust, and vibration with resulting annoyance and discomfort to plaintiff.

(8) That the reasonable rental value of the said portion of said Jackson street is $75 per month.

Plaintiff asks that the title to and possession of the said portion of said street (sub-ject to the right of the public to use the same for ordinary street and highway purposes) be declared to be in it, and that it have a judgment for its rents and damages, and further that the defendants be enjoined and restrained from operating its business over and upon said portion of said street.

Under date of May 13, 1915, the defendant Galveston-Houston Electric Railway Company filed its first amended original answer comprising the following:

(1) A general demurrer directed against the plaintiff's first amended original petition. (2) Several exceptions. (3) A general denial placing in issue all of plaintiff's averments. (4) Numerous special denials. (5) A statutory plea of "not guilty." (6) This defendant further alleges, in substance:

"(a) That it is an electric interurban railway chartered under the laws of the state, of Texas for the purpose of constructing, equipping, maintaining, and operating a line of interurban electric railway between the city of Houston in Harris county, Tex., and the city of Galveston, Galveston county, Tex., for the transportation of passengers between said cities and intermediate points in and between each of said cities. That it is incorporated under the act of 1907, which is now chapter 17 of the Revised Statutes of this state. That it is engaged in the transportation of passengers and some express, but does not carry freight.

"(b) That the interurban company has not and is not depriving the plaintiff of its use and enjoyment of Jackson street.

"(c) That on or about August 11, 1910, and for many years prior thereto, the defendant Houston Electric Company operated a line of street railway on and upon said Jackson street in the said city of Houston, under a lawful franchise from said city, authorizing it to construct, maintain, and operate lines of street railway in said city for carrying passengers. That on or about said 11th day of August, 1910, the Houston Electric Company made an agreement with this defendant Galveston-Houston Electric Railway Company, by the terms of which it permitted this defendant to operate its electric cars over the lines of the said Houston Electric Company on Jackson street, and this agreement between the two companies was ratified and confirmed and authorized by the city of Houston, so that it became a valid and binding ordinance of the city of Houston and granting by its terms to this defendant the right to operate its electric cars over the lines and tracks of the Houston Electric Company on Jackson street and Pierce avenue within the city limits. That thereafter, on or about the 24th day of July, 1911, this defendant and Houston Electric Company made a further and supplemental agreement with reference to the operation of this defendant's cars over the aforesaid tracks of the Houston Electric Company, and this supplemental agreement was also ratified and confirmed by the city of Houston, so that it became a valid and binding ordinance, granting to this defendant the right and privilege to operate its electric cars over the aforesaid lines and tracks, and thereafterwards this defendant, under the authority granted in these ordinances and contracts, began, on or about December 1, 1911, to operate its electric cars in the city of Houston and between the cities of Houston and Galveston and intermediate points along its route.

"(d) That this defendant is not a trespasser upon said Jackson street, but is there under lawful authority granted it by the city of Houston and by its codefendant, the Houston Electric Company.

"(e) That the operation of its cars upon said street is not an additional burden or servitude upon said street, but is the exercise and enjoyment of the easement and privilege for which the street was and is dedicated.

"(f) That the city of Houston, under its charter in force at the time these contracts were made in 1910 and 1911, and under all preceding charters of the city since its first incorporation in 1839, has had the absolute control and management of public streets within the city of Houston and the right to grant privileges of this character, and police power to regulate traffic on these public streets including Jackson street. That there is little or no dust and noise and inconvenience incident to the operation of the interurban cars, and that the operation of same does not constitute a nuisance. That this defendant has been operating its said cars in the same way since December 1, 1911, and any complaint upon the part of the plaintiff as to the alleged dust, noise, etc., and damage incident thereto, is barred by the two years' statute of limitation.

"(g) That there is no rental value of the portion of Jackson street for which plaintiff sues for title and possession; if there were any rental value, plaintiff has no right to rent said street or to receive the proceeds of any such rental value.

"(h) That this defendant procured its charter from the state of Texas, authorizing it to build and construct its line of street railway between Houston and Galveston, and procured from the city of Houston the right to operate its cars over the lines of the Houston Electric Company as hereinbefore set out.

"(i) That all of these facts were published and notorious and well known to the public, including this plaintiff, from the time this defendant began its construction and from the time it began its operations. That this defendant has invested several millions of dollars in the construction and maintenance of its line and equipment essential to the conduct of its business. That it is impossible for it to operate its line without reaching from the center of the city of Houston to the center of the city of Galveston. That the plaintiff well knew that it was constructing its lines and that it was about to operate its cars over Jackson street, but said plaintiff made no objection to its so doing, but stood by and remained silent while this company, operating under its lawful grant from the city of Houston, went forward and built its line and began operating its interurban street railway, and remained silent for more than two years after said operations were begun. That the operation of this line of interurban street railway is a great convenience to the public. That this defendant carries passengers for a fare of five cents from points in the city to the outer edges of the city of Houston, and does a local business within said city of Houston. That it is furthering the purpose for which the city streets and highways of the country were dedicated, and that it would be inequitable and unjust to allow the plaintiff to enjoin this defendant from operating its cars in the city of Houston. That such a proceeding would deprive this defendant of the value of its property and would render its investment ineffectual and would deprive the public of the benefits derived from the efficient service of the carrying of passengers. And also that the plaintiff is by these facts and circumstances estopped from maintaining this suit, and is estopped from questioning the right of this defendant to operate its said cars along Jackson street.

"(j) That this defendant is not a railroad within the meaning of the term 'railroad' as used by the statutes of the state of Texas, and that it is not amenable or subject to the restrictions and burdens of the laws of the state of Texas upon railroads, which railroads mean steam, commercial railroads; and that this defendant is engaged in the business of carrying passengers and light express in electric cars, and therefore is not, within the meaning of the laws of Texas, an additional burden or servitude upon the highways and upon the streets of the city of Houston. That this defendant has been since its beginning continuously, and is now, performing the service of an electric street railway or 'street car line,' within the city limits of the city of Houston.

"(k) That this defendant has never been, and is not now, engaged in the carriage of freight, and has never been treated, dealt with, or considered by the Railroad Commission of Texas as a commercial railroad. Said commission with full knowledge of the nature of this defendant's business has failed and refused to exercise control or supervision over this defendant and its business."

Under date of May 13, 1915, the defendant Houston Electric Company filed its first amended answer, comprising: (1) A general demurrer directed against the plaintiff's first amended original petition; (2) several special exceptions; (3) an averment to the effect that this defendant adopts the allegations contained in the first amended original answer of the defendant Galveston-Houston Electric Railway Company; (4) an allegation that this defendant is engaged in the business of a street railway company, properly chartered for said purpose under the laws of the state, and that it is operating its cars over the street in question under legal and sufficient franchises duly obtained from the city of Houston, and that its use of the street in question is not an additional burden or servitude upon same; and (5) a statutory plea of "not guilty."

Under date of May 13, 1915, the plaintiff filed its first supplemental petition replying to the first amended original answer of the defendant Galveston-Houston Electric Railway Company.

Under date of May 13, 1915, the plaintiff filed its second supplemental petition in reply to the first amended original answer of the defendant Houston Electric Company. This supplemental petition consists of: (1) A general demurrer; (2) a general denial; (3) special denials of the allegations contained in said defendant's answer.

Under date of May 13, 1915, the defendant filed a first supplemental answer replying to the first and second supplemental petitions filed herein. This supplemental answer consists of a general demurrer, general denial, and other special denials.

The case was tried before Judge Charles E. Ashe, without the intervention of a jury, the trial beginning on May 17, 1915, and concluding on the following 3d day of June. During the trial the attorneys for the plaintiff abandoned their efforts to recover a judgment for rents and damages and waived same. They also waived their prayer for injunction.

The court determined the question of title in favor of the plaintiff, and entered a judgment decreeing that the plaintiff have and recover of and from the defendants the title

to and possession of the land hereinbefore mentioned; tract No. 1 being the lot abutting on Jackson street, and tract No. 2 being a portion of Jackson street. After decreeing the title to the second tract to be in the plaintiff, the judgment reads:

"And this recovery is adjudged subject only to the right of the general public to use said second tract for ordinary street and highway purposes, that is, for ordinary travel thereon, and subject to the right of the Houston Electric Company, or its assigns, to operate a street railway upon, over, and along said street, and not for the use or operation thereon, or on any part thereof, for interurban railway purposes, or for freight, express, passenger, or baggage business between the cities of Houston and Galveston or between the city of Houston and any other point outside thereof, or for any travel to or between said points."

The court further awards to the plaintiff in said decree a writ of possession and costs of court.

The foregoing statement of the pleading and the result of this suit is copied from appellant's brief, and its accuracy is conceded by appellee.

It was agreed upon the trial that Jackson street was dedicated to the public by Mosely Baker, subsequent to the year 1842 and prior to the year 1850; that such dedication was for street purposes without exactly specifying what uses could be made thereof. It was further agreed upon the trial that the plaintiff owns lot 7, in block 122, in the city of Houston, abutting on Jackson street (described in plaintiff's petition as "first tract"), and also owns the underlying fee to that portion of Jackson street abutting upon the said lot 7 (described in plaintiff's petition as "second tract"), subject to the easement of the public to use said street as a public highway and city street. It was also agreed that the lot in question, in which the building of the Jewish Literary Society stands, was in possession of the plaintiff, the Jewish Literary Society, when the track in question was built, and during all times involved in this suit, and for the last five years, and now.

The use made of the property is shown by the following testimony of one of the members of plaintiff society:

"The building on the property in question is used by Jewish Literary Society to hold meetings, to hold literary meetings, to hold social meetings, to hold business meetings, and all kinds of gatherings pertinent to that kind of an organization, outside of games. There are no games going on outside of dominoes. And also I might say that there is a Sunday School conducted there every Sunday morning. As to the frequency with which meetings are held, the board meetings used to be twice a month, I think. During the summer months, they stretch them out to one time a month. Then, during the literary season, there is one literary program a month. Then they have one or two socials, and then there are committee meetings and other meetings. There is a crowd gathering there practically every night, one way or the other, except Saturday. The plaintiff is a corporation. I am not an officer now. I have been a director, but I am not now."

The defendant Houston Electric Company is a private corporation organized under and by virtue of the laws of the state of Texas, under date of October 25, 1901, "for the purpose of constructing, acquiring, maintaining and operating street and suburban railways for the transportation of passengers within and near the city of Houston, in Harris county, Texas." The Houston Electric Company, by virtue of certain ordinances duly enacted and passed by the city of Houston, has the right of operating a line of ordinary street railway over Jackson street and Pierce avenue in the city of Houston, and has had such right and privilege for as much as the last five years preceding the date of the trial, and that such right and privilege will continue under ordinances for more than the ensuing ten years.

The defendant Galveston-Houston Electric Railway Company is a private corporation organized under and by virtue of the laws of the state of Texas (under what is now chapter 17 of the Revised Statutes), its charter having been procured under date of April 15, 1907, "for the purpose of constructing, acquiring, maintaining and operating a line of interurban electric railway between the city of Houston, in Harris county, Texas, and the city of Galveston, in Galveston county, Texas, for the transportation of passengers, and to construct, own and operate union depots."

About the middle of the year 1911, and before the interurban company began operation, the Houston Electric Company doubletracked its line on Jackson street. This second track was laid in pursuance of a contract entered into between said company and the interurban company by which the latter would operate its cars over the tracks of the former company in the city of Houston. This contract and a supplemental contract upon the same subject entered into by and between said companies was approved by the city council of the city of Houston on July 24, 1911. In the same ordinances in which the city authorities approved the contract in question, they expressly grant the Houston Electric Company the right to double-track Jackson street, and expressly authorize the operating agreement between the Houston Electric Company and the interurban company with reference to the use of Jackson street, and also expressly grant to the interurban company a franchise to operate its cars over said double tracks on Jackson street.

City Charter of the City of Houston, § 4, art. 2, reads as follows:

"Sec. 4. *Street Powers.*—The city of Houston shall have the power to lay out, establish, open, extend, grade, narrow, care for, sell, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places, and bridges, and to vacate and close the same; and to regulate the use thereof; and to require the removal from the streets and sidewalks of all obstructions, telegraph, telephone, street railway or other poles carrying electric wires, signs, fruit stands, showcases, and encroachments of

every character upon said streets or sidewalks; and to vacate and close private ways."

The city charter further authorizes the city .to regulate the operation of street and electric railway companies to the very fullest extent, and further expressly empowers the city to authorize interchange of service and common use of tracks.

It was agreed upon the trial of this case that the previous charters of the city of Houston have always contained provisions substantially similar to the provisions of the charter of 1913 mentioned above.

The interurban company did not begin operation of its cars until on or about December 1, 1911.

The double tracks laid by the Houston Electric Company on Jackson street in pursuance of said contract extend in a southerly direction from Texas to Pierce avenue, a distance of 14 blocks. The lines then run easterly on Pierce avenue 16 or 17 blocks to Sampson street, from which street a single line laid and owned by the Houston Electric Company extends to the city limits, a distance of approximately 2 miles. Both of the double tracks before mentioned are used by both of the companies and are constructed in the same way and just as other tracks in said city which are used exclusively by the Houston Electric Company. The track from Sampson street to the city limits is used only by the interurban company. Under the contract and ordinance before mentioned, the interurban company is required to accept and transport passengers within the city limits for the same fare charged by the Houston Company, and to give transfers from its cars to any street car line in the city, and also to accept transfers from any of said street car lines for transportation on its cars within the city limits. City passenger traffic is discouraged by the interurban company along Jackson and Pierce avenue and also on Texas avenue, street cars being operated on said streets and avenues, but between Sampson street to the city limits the interurban does all of the city passenger carriage. There are vacant blocks on either side of the line from Sampson street to the city limits, and the interurban does not stop its cars at every block, but makes only five stops for reception and exchange of passengers between Sampson street and the city limits. On Pierce avenue, Jackson street, and Texas avenue it stops its cars to discharge and receive passengers every three or five blocks; but, as before stated, it discourages city passengers from boarding its cars on these streets unless such passengers desire to go to a point where the street car does not operate.

In laying the double track upon Jackson street, the Houston Company used a large quantity of gravel and shell for ballast, and the surface condition of the street was thereby improved and made better for travel. The two tracks, of course, take up more of the street than the space formerly occupied by the one track, and the width of the space on each side of the tracks between them and the ditch or drain which separates the traveled portion of the street from the sidewalk is at places along the street barely wide enough to permit a vehicle to pass. This condition, together with the more frequent passage of cars along the street, renders it less convenient as a means of ingress and egress to property abutting thereon than it was before the double track was laid and the interurban company began operations. The interurban company runs at least 40 cars or trains a day over the tracks of said street, and occasionally 50 or more are run in a day. Usually the cars are run singly, but a train of 2 cars is sometimes run and occasionally a train of 3 cars. Some of the cars operated by the interurban company are designed and used only for the carriage of baggage and express. These cars are operated separately from the passenger cars, and are not run in trains but singly. The articles shipped in said cars are gathered by the company from its customers at the point of shipment and delivered to the consignees at their address at the point of destination, just as the business of an express company is conducted. Some of the articles which have been transported on these cars weighed as much as 1,000 pounds, and articles of greater weight can be handled and shipped thereon. The transportation company which conducts this business, the cars used therein being furnished and operated by the interurban company, has solicited and obtained business from merchants in Houston who have merchandise shipped from New York to Galveston by steamship and from Galveston to Houston via the interurban. The interurban passenger cars are about 35 per cent. longer and 35 or 40 per cent. heavier than the average street car in use in the city of Houston. The baggage and express cars are the same size, but from one to two tons lighter than the passenger cars. The speed of interurban cars within the city limits is regulated by city ordinance and cannot exceed that to which the street cars are restricted. There is no evidence that the interurban cars run faster along the streets than the street cars. The fact that they take less time in going from the interurban station on Texas avenue to Sampson street than the street cars consume in going the same distance is because they do not stop to receive and discharge passengers so often, and does not indicate that they run faster. The evidence justifies the conclusion that the dust raised by the interurban cars and the noise and vibration caused by their operation is, on account of their greater size and weight, greater than that caused by the street cars. There is evidence that on several occasions exercises and business meetings which were being held in appellee's building were disturbed by the noise made by interurban cars passing along Jackson street.

The first and second assignments of error presented in appellant's brief are as follows:

First assignment of error: "The court erred in finding for the plaintiff and entering judgment herein in favor of the plaintiff and against the defendant Galveston-Houston Electric Railway Company, for the tract of land described in plaintiff's petition and in the judgment entered herein, as 'second tract,' same being a portion of Jackson street in the city of Houston, because the use being made of said Jackson street by said defendant, and the use which it intends to make of said street, is one of ordinary street uses and purposes for which said street was dedicated and intended, and said use by said defendant does not constitute an additional burden upon said highway."

Second assignment of error: "The court erred in finding for the plaintiff and entering judgment herein in favor of the plaintiff and against the defendant Galveston-Houston Electric Railway Company, prohibiting and preventing said defendant from using Jackson street 'for interurban railway purposes or for express, passenger or baggage business between the cities of Houston and Galveston, or between the city of Houston and any other point outside thereof, or for any travel to or between said points,' because, under the facts of this case and the law applicable thereto, the operation of the business of the Galveston-Houston Electric Railway Company does not constitute an additional burden or servitude upon the fee of said Jackson street, the use for which said highway was and is intended; this is especially true since the evidence undisputably establishes: (1) That this defendant operates electrically propelled cars (usually singly) of light weight, which constitute substantially the same burden upon the highway that ordinary street cars do; (2) that this defendant operates said cars over and upon the ordinary street car tracks of its codefendant, which tracks are substantially flush with the street surface, and which would remain and be upon said street even if this defendant made no use of same; (3) that this defendant operates its cars as ordinary street cars, and conducts a local street car business, serving the local needs and convenience of the citizens within the limits of the city of Houston; and (4) that this defendant does not conduct its business in the manner adopted by steam or commercial railways, does not use similar equipment, and does not carry freight."

[1] The question presented by these assignments is difficult of decision and one upon which there is a conflict in the authorities. The decisions of our Supreme Court have settled two similar questions:

First, that the occupation of a street by a commercial steam railway by placing its tracks thereon and operating its trains thereover is not such use of the street as was contemplated in its dedication to the public, and is a taking of the fee of abutting property owners in the street, and that such owner is entitled to an injunction to prevent such taking unless compensation is made therefor. Railway Co. v. Fuller, 63 Tex. 469; Lumber Co. v. Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870.

Second, that the construction and operation of an electric street railway along a public street is not an appropriation of the street to a different purpose from that for which it was originally dedicated, and does not impose an additional servitude upon the street which would entitle an abutting property owner who owns the fee in the street to compensation. Street Ry. Co. v. Limburger, 88 Tex. 79, 30 S. W. 533, 53 Am. St. Rep. 730.

There is no decision of our Supreme Court upon the question of whether the operation along a public street of an interurban electric railway of the character of appellant railway imposes an additional burden upon the street which entitles the abutting property owner who owns the fee in the street to compensation for taking or damaging his property. The determination of this question in a particular case depends upon whether the method of construction and operation of the interurban railway is more akin to that of a commercial steam railway or the ordinary electric street railway. The question is a very practical one, and should be determined by the facts of the case, and not upon theory or legal fiction. It seems to us that some of the tests applied by the courts in determining whether an interurban railway should be placed in the class of commercial or street railways are arbitrary and unreal, and that the only practical and real test is whether the use of the street by such railway is different from that contemplated in its dedication to the public, or materially interferes with the general and ordinary uses for which the dedication was primarily made. Mr. Lewis, in his work on Eminent Domain (3d. Ed. § 156), says:

"Starting with the well-settled proposition that the street passenger railway is a legitimate street use, and that the commercial railroad is not, it does not seem difficult to dispose of the interurban railroad. In so far as it is operated as a street passenger railway, in aid of the local travel, stopping at street crossings or at convenient intervals, to take up and let down passengers, it is on the same basis as the urban street railway. If not operated for the accommodation of local travel, and in substantially the same manner as the urban street railway, it should be classed with the commercial railroad, with the consequent liability to abutting owners. Such a railroad with its trains sweeping across the country at 20 or 30 miles an hour, and sometimes more, stopping only at cities and towns, and at infrequent intervals in the country, and in the cities and towns stopping only for the accommodation of its interurban passengers, and not at all for local traffic on the street, is clearly analogous to the steam railroad, and competes with it and it alone. * * * If the interurban railroad carries freight as well as passengers, the analogy to the steam railroad is complete."

If these conclusions of the learned author are correct, the facts of this case place the appellant company upon the same basis as the street railway company. The undisputed evidence shows that it is operated within the city of Houston in aid of local travel, and that it stops at convenient distances to take up and let down passengers. The effect of this undisputed evidence is not lessened by the admission of appellant's manager that it does not encourage local passenger travel on its cars along those streets upon which the street cars operate. The facts re-

main that it furnishes the only means of local transportation for passengers along a large portion of the line over which it operates in the city of Houston, and that this local passenger traffic is conducted in the same manner as the street railway conducts its business and is subject to the same regulations by the city authorities. It receives and issues transfers from and to all of the street car lines in said city, and must be regarded as furnishing an integral part of the local transportation facilities of the city. It is true that it carries freight, if the word "freight" is given its most comprehensive meaning, which would include any article or thing which is transported whether by express or by freight trains. It is clearly not engaged in the operation of freight trains, nor is it conducting a freight business as distinguished from an express business. On the contrary, it conducts an express business just as such business is conducted by express companies upon all of the passenger trains in the country. The fact that some of the articles of merchandise transported by it are shipped from points outside of this state to Galveston to be transported by appellant from Galveston to Houston, and that appellant solicits business of this kind, does not make the business conducted by it a freight business as distinguished from the carriage of express. The Supreme Court of Indiana, in the case of Mordhurst v. Ft. Wayne Traction Co., 163 Ind. 268, 71 N. E. 642, 66 L. R. A. 105, 106 Am. St. Rep. 222, 2 Ann. Cas. 967, which was a suit by an abutting property owner, who owned the fee in the street, to recover damages alleged to have been caused his property by the operation of an interurban electric railway along said street, says:

"The fact that light express matter, passenger baggage, and United States mail matter are carried on a car, does not affect the property owner, nor injure his property. The transportation of articles of this kind does not create any resemblance between the interurban electric railroad and a steam railroad carrying ordinary goods and merchandise, and results in none of the annoyances and injuries which are caused by either passenger or freight trains on such a railroad.

"Trains on steam railroads are drawn by locomotives of enormous size and weight, which constantly emit smoke, sparks, cinders, and steam, and which drop coals of fire from their fire boxes. Their passenger trains usually consist of an express and baggage car, and from one to many large and heavy passenger coaches. Freight trains, as commonly made up, contain from 1 to 25 or 30 large, roughly constructed cars for the transportation of coal, stone, iron, coal oil in tanks, lumber, live stock, and other heavy merchandise of every description. Such trains, so propelled, unavoidably fill the atmosphere in their vicinity with dust, smoke, and steam, make much noise when running, stopping, and starting, seriously obstruct the streets and street crossings, and for considerable periods every day to a great extent exclude other travel and traffic from the streets on which they are moved.

"A fair comparison of the incidents and consequences attending the running of a single interurban electric car carrying passengers and baggage, light express matter, and United States mail matter over the streets of a city, or resulting therefrom, with the real and substantial annoyance, inconvenience, danger, and injury to property attending the operation of passenger and freight trains on steam railroads, will demonstrate that most, if not all, the ills and injuries anticipated from the former, are imaginary, or at least greatly exaggerated. * * *

"The only basis for a claim for compensation is the circumstance that the interurban railroad is intended for the transportation of persons, baggage, light express matter, and United States mail matter to places outside of the city of Ft. Wayne, and at greater or less distances therefrom. The reason given in support of this claim is that, while the interurban railroad is, to some extent at least, a new and additional servitude, it is of no local benefit to the abutting property, that it does not aid in carrying forward the local travel or assist in the work of transportation for which the street was designed, and that the passengers and goods carried by it would not, in its absence, have been brought upon the street at all. It is contended that this is a use of the street not contemplated by the landowners who laid out or dedicated the highway. A street platted or otherwise laid out in a city or town of this state is thereby dedicated to the use of the public, and not exclusively to the use of abutting property owners, or to the convenience or profit of any or all of the inhabitants of the particular municipality. It forms a part of the great system of highways of the state, and its use for intercommunication with other neighborhoods, towns, and cities is one of its most important purposes. * * * The dedication of a street must be presumed to have been made, not for such purposes and usages only, as were known to the landowner and platter at the time of such dedication, but for all public purposes, present and prospective, consistent with its character as a public highway, and not actually detrimental to the abutting real estate. (Citing authorities.) The convenience and advantage of all the inhabitants of the city and of the public at large must be regarded as the objects contemplated when the street was laid out or opened. A narrower construction would require a sacrifice of the greater interests of the community and the public to the inferior and subordinate claims of the local lot owner and abutter."

In the Mordhurst Case, the interurban company did not use the tracks of the local street car company, but constructed its own line, and did not carry local passengers. In other respects it operated its railway just as appellant's is operated.

We think this holding by the Indiana court is sound in principle and supported by the weight of authority.

An interurban electric railway company might so construct its tracks and operate its cars as to bring itself in the class of steam or commercial railways and be held to the same liability to owners of property abutting upon streets upon which it operates, but we do not think upon the facts of this case the appellant interurban railway can be held to such liability. If, as we have above held, the operation of the interurban railway does not impose an additional burden upon Jackson street, its operation along and over said street cannot be regarded as a taking of appellee's fee in the street, and the judgment of the court awarding appellee title and possession of that portion of the street in which it owns the fee cannot be sustained.

These conclusions render a discussion of the other questions presented in appellant's brief unnecessary. The evidence upon which these conclusions are based being undisputed and having been fully developed, it follows that the portion of the judgment complained of should be reversed, and judgment here rendered for appellants, and it has been so ordered. That portion of the judgment awarding appellee title and possession of tract No. 1 described in its petition is affirmed.

Reversed and rendered in part, and affirmed in part.

### On Motion for Rehearing.

In the motion for rehearing presented by appellee, the opinion of this court, reversing the judgment of the court below and rendering judgment for appellants, is vigorously assailed, and we deem it proper to answer some of the objections urged against our conclusions both of law and fact.

[2-4] The question of whether the operation of interurban electric cars along Jackson street imposes an additional burden upon the street, in the sense that it is an appropriation of the street for purposes and uses not contemplated in its dedication, is a question of law, and this court is therefore not bound by the conclusions of the trial judge on such question. We do not understand learned counsel for appellee to contend otherwise. We cannot, however, make a finding of fact contrary to the finding of the trial court, if there is any conflict in the evidence upon such fact issue. If reasonable minds could differ in the fact conclusions to be drawn from the evidence, the appellate court must adopt the finding of the trial court, unless such finding is against the overwhelming weight of the evidence, in which case the appellate court, while it cannot substitute its findings for that of the trial court and render judgment thereon, is authorized to reverse the judgment and remand the cause for a new trial.

[5] No conclusions of fact were filed by the trial judge, but we must presume that every fact which there was sufficient evidence to support and which was necessary to sustain the judgment was found by him.

[6] One of plaintiff's witnesses testified that an electric car of appellant company running along Jackson street "made more noise than would be made by a steam train." Another of plaintiff's witnesses made the statement, in regard to the speed of the interurban cars, that they "ran like a streak of lightning"; and another testified that the vibration caused by these cars was "terrible." If we could presume that the trial court found these apparently unreasonable statements were true, it is, we think, clear, in view of the undisputed evidence as to the size of the cars, the number which are run together as a train, the facts that they are run over the tracks used by the street car company and their speed is limited by the city ordinance to that of the street cars, that the excessive noise and vibration described by the witnesses was due to the unlawful and negligent operation of the cars and could not result if the cars were operated with proper care and in accordance with the city ordinance, and that the only reasonable conclusion to be drawn from the whole evidence as to the necessary noise and vibration caused by the running of the interurban cars when they are not operated in a negligent manner is that stated in our former opinion.

Plaintiff would have a remedy for any injury it may have sustained because of the noise and vibration of the interurban cars due to the unlawful or negligent manner of their operation, but no such claim is asserted in this suit. The prayer of plaintiff's petition is not accurately stated in our former opinion. The prayer is as follows:

"Wherefore plaintiff brings this action, and prays citation to defendants, and that on hearing it have judgment for the title to and possession of said premises, subject only to the right of the public to use said second tract for ordinary street and highway purposes, that is, for ordinary travel thereon, and not for the uses which defendants have made or are making thereof, as hereinbefore alleged, and for its damages, that is, the rental value aforesaid, and—until a writ of possession herein shall be executed—enjoining and restraining the defendants from using the same for any purposes except for ordinary travel thereon, and from using or operating thereon any cars for interurban railway purposes, or for freight or passenger or baggage purposes for travel between the cities of Houston and Galveston and any other points outside of said cities, and to and from any points whatever, and awarding a writ of possession, and for costs and general relief."

It is clear from the petition that plaintiff does not sue for damages for the unlawful or negligent operation of the railway by defendants, but the suit is one in trespass to recover the title and possession of the property and the reasonable rental value of its use and occupancy by the defendants, and a temporary injunction was asked to restrain defendants from using the property pending a determination of the question of title and possession. It expressly waived its claim for damages, and while the statement in our opinion, which was taken from appellants' brief, that it waived its prayer for injunction, does not seem to be borne out by the record, the fact remains that its claim to injunction was based on its claim to the right of possession of the property occupied by the tracks of defendants, and not to prevent injury to plaintiff's abutting property caused by the negligent operation of the railway. Our conclusion that the use and occupancy of the street by the defendants is not a taking of plaintiff's property disposes of its prayer for injunction. As before stated, if plaintiff's property has been damaged or it has suffered any injury by reason of the unlawful or negligent operation of appellant's railway, it is entitled to recover for such injury, and the judgment in this suit will

not be a bar to such claim. There is therefore no reason for remanding this case in order to give appellee an opportunity to amend its petition and sue for damages caused by the negligent operation of appellant's cars.

In response to the request for additional conclusions of fact, we find that our statement in the main opinion that the interurban passenger cars were 35 or 40 per cent. heavier than the cars used by the street car company is erroneous. The record shows that they are nearly twice as heavy.

[7] Upon the question of the local service rendered by the interurban company, we add to our former findings the following: The ordinance under which the interurban company was granted the right to use the streets contains the following provision:

"Provided, however, that the Galveston-Houston Electric Railway Company shall be under no obligation to furnish such local service between points on said new tracks or extensions after the Houston Electric Company has undertaken to and is furnishing the same; and provided further, that through cars or trains of cars of the Galveston-Houston Electric Railway Company making through trips between Houston and Galveston, or between Houston and other points on the line of the Galveston-Houston Electric Railway Company shall not be required to render such local service."

This provision of the ordinance granting the franchise must be read in connection with the provision in said ordinance, the substance of which is stated in our former opinion, and which is as follows:

"That if the local transportation service between points on the extensions of the lines of the Houston Electric Company as furnished by the interurban company shall prove at any time inadequate and insufficient, the city shall have the right to require and it shall be the duty of the Houston Electric Company to furnish adequate local service in going to and coming from points on said new tracks; and that until such local service is furnished by the Houston Electric Company, it shall be the duty of the interurban company to establish and maintain, at reasonable distances along said new tracks or extensions, within the city, stopping points for receiving and discharging passengers, and it shall likewise be the duty of the interurban company to stop its cars at such points to receive and discharge passengers; and it shall be the further duty of the interurban company to carry local passengers received at said points to any other point on the tracks of the Houston Electric Company in the city of Houston over which the interurban company may operate for the legally established rate for local street car service, and if the destination of such passengers be to some point in the city of Houston requiring a transfer, to furnish such transfer, and to recognize transfers of the Houston Electric Company issued under ordinances of the city, from points on the line of the Houston Electric Company to points on said new tracks or extension."

When these two sections or provisions are construed together, it is manifest that the terms "through cars or trains of cars" and "through trips," used in the provisions first quoted, mean special cars or trains of cars, and do not apply to cars on the regular schedule of the interurban company.

The section of the city from Sampson street to the city limits, to and from which appellant furnished local transportation and is required to give and accept transfers to and from all street car lines in the city, is sparsely settled, having recently been taken into the city, and this local passenger traffic is only about 1 per cent. of its passenger business.

The purposes for which the street railway and the interurban railway were chartered are stated in our former opinion. Neither of said companies were chartered as carriers of freight or express. In our former opinion we say that "a train of two cars is sometimes run." The evidence shows that four trains of two passenger cars are run every day, and that on Sundays ten or twelve trains of two passenger cars are run.

[8] There was evidence that the noise made by the interurban cars was such that a person speaking in appellee's building could not be heard at all in the opposite end of the building when an interurban car was passing. This court did not state as a conclusion of fact in our former opinion that appellant company only carried "light" express matter. We found the facts as to what it did carry and the manner in which the business was conducted. The evidence from which these facts were found is undisputed. Our conclusion is that the facts shown by the undisputed evidence do not make appellant a carrier of freight as distinguished from a carrier of express. The question of whether the express matter carried was light or heavy is, we think, wholly immaterial, as only one light express car at a time was used in its transportation. We cannot conceive how it could damage plaintiff's property more to have an express car, of the kind shown to be operated by appellant, pass along Jackson street conveying 10 articles weighing 1,000 pounds each, than it would to have such car carry 1,000 articles weighing 10 pounds each.

The statement in our former opinion as to the operation of the cars by the interurban company which was the defendant in the Mordhurst Case, cited and quoted from in our former opinion, is inaccurate in so far as it implies that the railway in that case was in operation at the time the suit was brought. The suit was brought before the railway began operation, and the character of the railway discussed in the opinion in that case was determined by the provisions of its charter and the ordinance granting its franchise. We do not think this in the least affects the force of that opinion as authority in this case.

We have carefully considered the motion for rehearing, and feel constrained to adhere to the conclusions expressed in our former opinion. It follows that the motion should be overruled, and it has been so ordered.

Overruled.